648 So.2d 1015 (1994)
Carolyn Chehardy HAIK
v.
George Michel HAIK, Jr.
No. 94-CA-563.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 1994.
Writ Denied March 17, 1995.
*1017 André Guichard, New Orleans, for plaintiff/appellant Carolyn Chehardy Haik.
Harry P. Pastuszek, Jr., Mandeville, for defendant/appellee George Michel Haik, Jr.
Before WICKER, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Both parties, Carolyn Chehardy Haik (mother) and George Michel Haik, Jr. (father), appeal from the May 24, 1994 judgment setting out, in detail, the manner in which they shall share custody of their minor son under a joint custody plan. For the reasons which follow, we reverse in part and affirm in part.
The parties were married on June 18, 1988. One child was born of the marriage, George Michel Haik, III. On July 24, 1989, the mother filed for separation and asked for sole custody. Ultimately, a consent judgment was rendered on November 20, 1990 awarding joint custody. The parties were to develop an implementation plan. Shortly thereafter the parties commenced filing rules against each other. It is an understatement to say that the parties have been extremely argumentative regarding the custody and visitation arrangements, in some instances disputing each hour. Eventually, in open court on December 18, 1992, with the threat of trial and court determination, the parties reached an agreement on how they would share custody of their child, including regular, holiday and summer custody. A stipulation was entered on the record, with each party orally acknowledging that they were in agreement with the plan. However, the agreement between the parties was short-lived and the mother refused to sign the judgment. The judgment on the stipulation was eventually signed on February 25, 1994 after the mother was ordered to sign it by the court. Meanwhile, on June 14, 1993, the mother had filed a rule to amend the custody access agreement and reduce the father's access time. Then, the father responded with rules to increase his visitation and the battle began anew. This round of rules culminated in a hearing and judgment by the trial court setting out the access time of each party under their joint custody arrangement. The judgment was exhaustive, covering every single day of the year and was deemed necessary by the trial judge because of the unyielding refusal of both parties to compromise or work out any variances in the arrangements. The trial judge also resolved a dispute regarding which school the child should attend, ordering that the child attend St. Ann's through first grade and then, upon petition of one of the parties, the child would be evaluated during first grade for appropriate placement for second grade. This judgment was rendered on May 24, 1994 and is the basis for the instant appeal.
Both parties appeal, neither being satisfied with the lower court judgment. Both dispute the amount of time each was granted physical access to the child during the school year and both disagree with the holiday schedule. Both also disagree with the resolution of the school dispute. Additionally, the mother disagrees with the summer custody access schedule and the expert appointed to evaluate the child in the event that the parties cannot agree on the appropriate school for the child after first grade.

Physical Access to Child Under Joint Custody Plan
Both parties disagree with the amount of physical access to the child granted to each *1018 by the trial judge. Each argues that the other was given too much time, or that they themselves were awarded insufficient time. Both parties also disagree with the holiday schedule set out by the trial court. Also, the mother takes issue with the summer schedule.
The May 24, 1994 judgment generally gave the father physical custody of the child three weekends a month, with Monday through Thursday custody granted to the mother. It gave the father uninterrupted custody for approximately two months of the summer and three weeks to the mother. It abolished parental sharing of all holidays with the child except the four major ones declared by the trial court, Mardi Gras, Easter, Thanksgiving and Christmas. Particularly, the judgment provided in pertinent part:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that until the minor child, George M. Haik, III completes fourth grade the custody of him shall be shared by his parents as follows:
1. SCHOOL YEAR
During every four week period beginning with the weekend of March 25 through March 27, 1994 the father, George M. Haik, Jr., shall have custody of George M. Haik, III the first, second and fourth weekends from the Friday of said weekends from the end of school until Sunday at 7:00 p.m. The pick-up on Friday will be at the child's school and the drop-off at the home of the mother, Carolyn Chehardy Haik. Additionally, during the same four week period the father shall have custody from the end of school of the Wednesdays following each weekend that he has custody through the following Thursday in time to return his child to school.
2. HOLIDAYS
a. For the purpose of this judgment, there shall only be four holiday periods, all other holidays, whether Federal, State or ecclesiastical shall be governed by the school year or summer schedules provided for herein.
1. Easter
2. Thanksgiving
3. Christmas
4. Mardi Gras
b. The following holiday schedule is established for 1994-95:
1. Easter, 1994entirety of the Easter school holiday period to the mother.
2. Thanksgiving, 1994from 9:00 a.m. Thanksgiving Day until 7:00 p.m. of the Sunday following the holiday to father.
3. Christmas, 1994from first day of vacation from school through 9:00 p.m. Christmas Eve to mother, from 9:00 p.m. on Christmas Eve through 8:00 p.m. December 30 to father. From December 30, at 8:00 p.m. through resumption of school to mother.
4. Mardi Gras, 1995from 7:00 p.m. on the Sunday before Mardi Gras through Wednesday after Mardi Gras at 3:00 p.m. to mother.
The foregoing holiday schedule shall supersede the regular school custody schedule where in conflict. Where the holiday schedule supersedes the regular school period schedule as to a weekend or Wednesday that supersession shall be ignored as to the continuation of the school schedule. For example, should mother's weekend precede a holiday period in which father has custody on the Wednesday after 3:00 p.m., the mother would lose that Wednesday and following Wednesday would as well be with the father as the Wednesday following the fourth weekend.
c. The foregoing holiday schedule shall alternate on an annual basis between the parties, e.g., the parent having Mardi Gras 1995 will not have it in 1996, similarly the parent not having December 30 through beginning of school in 1994-95 shall have it in 1995-96.
3. WHEN SCHOOL NOT IN SESSION
For those situations where, either during the school year or in carrying out the holiday custody schedule, the child *1019 is not attending school when the pick-up or drop-off is scheduled, then the pick-up will instead be at 9:00 a.m. at a neutral site along the route between the parents homes and the drop-off will be at the mother's home at 9:00 a.m.
4. SUMMER
a. The father shall pick-up the child at school at the close of school on the last day immediately preceding summer vacation for uninterrupted custody of the child through 9:00 a.m. Friday of the last full weekend in June.
b. The mother shall have uninterrupted custody from 9:00 a.m. of the Friday of the last full weekend in June through 7:00 p.m. of the third Sunday thereafter. The mother shall pick-up and drop-off the child at the father's home for this visitation period.
c. The father shall then have uninterrupted custody through August 15 at 7:00 p.m. when the father shall return the child to the mother's home.
The May 24, 1994 considered judgment provided a substantial departure from the prior February 25, 1994 consent judgment, which generally alternated weekends, weeks of the summer and numerous named holidays. The former judgment provided in pertinent part:
IT IS ORDERED, ADJUDGED AND DECREED, and the parties agree, that defendant, George M. Haik, Jr., M.D., shall enjoy physical care, custody and control of the minor child, George M. Haik, III, as follows:
a) Every other weekend from Friday at 3:00 o'clock p.m. until Monday at 9:00 o'clock a.m.
b) Every Wednesday from 8:00 o'clock a.m. until Thursday at 8:00 o'clock a.m.
c) Monday from 1:30 o'clock p.m. until 7:30 p.m. in the weeks when he does not return the child at 9:00 o'clock a.m. on Monday from weekend timesharing, and when the child starts kindergarten these Monday hours will change to 3:00 p.m. until 7:30 p.m.
d) Alternating weeks all summer, a week and a week.
e) From 3:00 p.m. until 8:00 o'clock p.m. on George M. Haik, Jr., M.D.'s, birthday; Mrs. Haik shall have the child from 3:00 p.m. until 8:00 p.m. on her birthday.
f) Every Father's Day weekend from 3:00 p.m. on Friday until Monday at 9:00 a.m.; Mrs. Haik shall have the child every Mother's Day weekend.
g)(i) Alternating holiday periods, commencing with Christmas Eve, 1992, as set out herein;
(ii) the holidays periods are:
a) Mardi Grasfrom the Sunday before at 9:00 a.m. until Mardi Gras night at 7:00 p.m.; alternating years, Friday before Mardi Gras 6:00 p.m. through Sunday before Mardi Gras 6:00 p.m.
b) Easter weekendfrom Friday at 6:00 p.m. until Sunday at 6:00 p.m.
c) Memorial Dayfrom Friday at 6:00 p.m. until Monday at 6:00 p.m.
d) Fourth of Julyfrom 6:00 p.m. on July 3 until 9:00 p.m. on July 4th.
e) Labor Dayfrom Friday at 6:00 p.m. until Monday at 6:00 p.m.
f) Halloweenfrom 3:00 p.m. until 9:00 p.m.
g) Thanksgivingfrom Wednesday before Thanksgiving at 6:00 p.m. until Sunday after Thanksgiving at 6:00 p.m.
h) Christmas Evefrom 6:00 p.m. on December 2 until 7:00 p.m. on Christmas Eve, December 2 which should alternate every year between the parents, so the parent who has from December 20 to December 24 one year will have from December 24 through December 30 the next.
i) Christmasfrom 7:00 p.m. on December 24 until 10:00 a.m. on December 30th, alternating each year so that the parent who has the pre-Christmas period one year has the Christmas period the next and so forth.
j) New Years' Eve and New Years' Dayfrom December 30th at 9:00 a.m. *1020 until 7:00 p.m. the evening before school resumes.
k) Child's birthdayshould alternate each year from 9:00 a.m. until 6:00 p.m.
l) If there is a conflict between a weekend and a holiday, the holiday schedule prevails.
Issues concerning modification of child custody are to be determined according to the provisions of La.C.C. arts. 131-134 and the judicial interpretations thereof. In custody modification cases, when a party attempts to modify a "considered decree", he bears the heavy burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
When a judgment is "by consent" and there is no hearing and no evidence is received at the district court level prior to the entry of the joint custody order which is sought to be modified. Such a joint custody decree is not a "considered decree" within the meaning of Bergeron, supra. In a consent judgment, the heavy burden rule is not applicable, but the moving party must still prove a material change in circumstances since the entry of the original decree and that the modification proposed is in the best interest of the child. Bergeron, supra; Beard v. Beard, 599 So.2d 486 (La.App. 3rd Cir.1992); Pulley v. Pulley, 587 So.2d 116 (La.App. 2nd Cir.1991); McGee v. McGee, 552 So.2d 576 (La.App. 2nd Cir.1989); Standards and clear boundaries are necessary in modification cases in view of evidence "that more harm is done to children by custody litigation, custody changes, and interparental conflict, than by such factors as the custodial parent's post divorce amours, remarriage, and residential changes, which more often precipitate custody battles under liberal custody modification rules than conduct that is obviously harmful to the child, such as abuse or serious neglect, which justifies intervention to protect the child under the court's civil or juvenile jurisdiction." Bergeron, supra.
In the instant case, the original joint custody plan was entered by the consent of the parties. It was not a considered decree and the heavy burden of proof required by Bergeron is not necessary. Nevertheless, the moving party is required to prove that there had been a material change in circumstances since the entry of the original decree. We find no such material change in circumstances evidenced in this record, warranting the change in the joint custody physical access order rendered by the court on May 24, 1994.
The previous custody and physical access plan was a result of a negotiated agreement between the parties. A plan agreed to by the parties is preferred to a court ordered plan, provided the best interests of the child are served. La.C.C. art. 132. The only change evidenced by this record is a change in the parties' minds that they prefer something different. Change of mind is not a "sufficient" material change of circumstances to warrant judicial intervention. The mother argues that circumstances have changed because the child's school hours have changed with him beginning kindergarten. The fact that the child has changed from pre-school to kindergarten does not require a change in the custody arrangement, as common sense would dictate that any custody hours would be secondary to the child's school hours and the parent's responsibility to get the child to school accordingly if under that parents' care when school begins. Furthermore, the February 25th, 1994 judgment covered the necessary change required for a change in school hours.
The trial judge was justified in his exasperation with the parties' contentions and litigation over minor, insignificant time issues that they should be able to work out between themselves in the best interest of their child. Although the court's position is understandable, it does not justify a change in custody, without a material change in circumstances, *1021 that does not serve the best interest of the child.[1]
Accordingly, because we find no "material change in circumstances" justifying the May 24, 1994 change in the February 25, 1994 consent custody arrangement, we reverse that part of the judgment which changes the physical access arrangements of the joint custody plan and reinstate the consent plan.

School Attendance
Both parties appealed from the part of the May 24, 1994 judgment which determined that the child should attend St. Ann's School through the first grade and thereafter, upon motion of one of the parties, be evaluated by Dr. Leighton Stamps for a determination as to the appropriate educational facility for the child after first grade.
This part of the controversy centers on the preferences of the father for his child to attend Metairie Park Country Day (Country Day), from which he graduated, and of the mother for the child to attend St. Ann's, her neighborhood parish Catholic school. While the mother considers the child's religious education paramount, the father believes that his son's academic education will be inferior at St. Ann's. He argues that Country Day is a superior academic institution and attendance there by his son is in the child's best interest.
The trial judge attempted to balance the desire of both parties. He determined that the mother's desire that the child obtain a religious background could be served by the child attending St. Ann's for two years, without suffering serious detriment to his academic potential. Thereafter, mindful of the child's superior intellect and the increasing need for academic challenge as the child grew older, the trial court ordered that the child be evaluated, and the matter of the appropriate educational facility reconsidered at that time, if the parties could not, in the interim, agree.
The mother objects to the court's ruling, arguing that the court erred in not ordering that the child attend St. Ann's through the seventh grade. The father argues that the trial court erred in ordering that the child attend St. Ann's at all, instead of Country Day, in view of the record evidence that the latter is the superior academic facility. We disagree with both parties, see no manifest error and affirm the trial court ruling on this issue.
In cases like this, involving the best interests of a child in a dispute between parents, the trial judge is afforded wide discretion in determining which arrangement will best serve the child's interest and the court's determination will not be disturbed in the absence of manifest error. We find no such error in the court's determination on this issue. To the contrary, in our view, the court did a thoughtful and exemplary job of balancing the desires of both parents with the needs of the child.
A ruling by the trial court on the child's education through seventh grade, as proposed by the mother, would needlessly preclude later consideration of now unknown factors that might arise and provide reason for modification, which would not be in the best interest of the child. Therefore, we see no error in the trial court's ruling that the matter be reevaluated, on petition of one of the parties, before the child is to enter the second grade.
Similarly, we see no error in the trial court's ruling that the child begin his kindergarten education, and continue it through first grade, in his church school, providing the child from the outset with religious background and social integration with his neighborhood peers, without damage to his academic potential. The trial court allowed for reevaluation before the second grade, if the parties cannot agree on an appropriate educational facility for the child, to determine if the best interests of the child warrant a different academic atmosphere. This ruling by the trial court is not manifestly erroneous.
However, we do find that the appointment of Dr. Stamps to evaluate the child *1022 for second grade placement is premature. Hopefully, the parties will be able to work this out between themselves and agree on what is in the best interest of their child insofar as his future educational needs are concerned. Thus, the future evaluation might not be necessary. Furthermore, it is uncertain what the issues might be at that time and who might be the best person to conduct the evaluation if it is necessary. As stated above, it is not in the child's best interest to render a ruling today that will serve to preclude the trial court from considering factors that are presently unknown. Furthermore, Dr. Stamps was initially hired by the father to evaluate the school controversy. And, Dr. Stamps has already voiced his opinion based on a specific factual scenario. His predisposition in the matter might be a detriment to this future appointment and we vacate and set aside that part of the May 24, 1994 judgment which appoints Dr. Leighton Stamps, as being premature and manifestly erroneous.
Accordingly, for the reasons stated above, we reverse the trial court judgment insofar as it modifies the earlier consent agreement, regarding the parties' physical access to their child implementing the joint custody judgment, and appoints Dr. Stamps as a future evaluator. In all other respects, the judgment is affirmed. Costs of appeal are to paid equally by both parties.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] For example, the May 24, 1994 judgment by the trial court eliminated all parental sharing of holiday visits, like the child's birthday, Mother's Day or Father's Day, other than the four major holidays prescribed in the judgment. It is difficult to see how this is in the best interest of the child.