714 So.2d 906 (1998)
Teresa Renee Johnson SHAW, Plaintiff-Appellee,
v.
James Neil SHAW, Defendant-Appellant.
No. 30613-CA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
Rehearing Denied August 13, 1998.
*907 Paul Loy Hurd, Monroe, for Defendant-Appellant.
Robert P. McLeod, Jr., Monroe, for Plaintiff-Appellee.
Before HIGHTOWER, BROWN and CARAWAY, JJ.
CARAWAY, Judge.
In this child custody and support case, the trial court rendered a judgment maintaining a prior award of joint custody but reducing to writing the physical aspects of the joint custody, modifying the child support obligations and upholding the mother's choice of elementary school. For the following reasons, we affirm in part, amend in part and render.

Facts/Procedural History
James Neil Shaw ("Neil") and Teresa Renee Johnson Shaw ("Renee") were married on June 30, 1989; Savannah, their only child, was born in March 1991. In May 1994, Renee filed a petition for divorce, submitting a proposed "Joint Custody Plan of Implementation" and moving to implement said plan and be named domiciliary parent. The Joint Custody Plan provided that Neil would pay Renee $375 per month child support and Renee would maintain insurance coverage on Savannah with the parties splitting all medical, dental, orthodontic and drug expenses incurred by Savannah and not covered by insurance. By agreement of the parties, a "Judgment on Rule" dated June 28, 1994 was entered which ordered into effect the Joint *908 Custody Plan previously filed. The judgment provided for the parties to alternate the income tax deduction for Savannah each year. The Joint Custody Plan also stated that Renee would have physical custody of Savannah except when Neil had physical custody of her which would occur at "all reasonable times and places."
The parties' divorce judgment was rendered on December 14, 1994. The divorce judgment also provided that the provisions of the Judgment on Rule that had been rendered and signed in June 1994 would be maintained.
On July 10, 1996, Renee filed a pleading styled "Rule for Increase in Child Support and for Other Relief" alleging that Savannah's expenses had substantially increased since the 1994 judgment fixing the support at $375 per month. Renee requested that the court order Neil to pay child support in accordance with La. R.S. 9:315-9:315.14 and that she be allowed to claim the dependency exemption for Savannah on all federal and state income taxes each year rather than every other year.
On July 29, 1996, Neil's attorney filed a pleading styled "Rule for Modification of Child Custody, Child Support and Other Relief." Neil alleged there had been a change of circumstances sufficient to justify a change of custody from the current plan to a plan that would provide for equal sharing of the physical custody of Savannah. Neil also requested that the court order that Savannah attend Lexington Elementary School (a public school) rather than continuing to attend Grace Episcopal School (a private school).
Following a trial on these issues, the trial court determined that the existing Joint Custody Plan adopted in 1994 was not specific with respect to Neil's visitation rights but that the parties had apparently worked out a schedule between themselves over the two years. The court thus treated the matter as one where there had been an agreed physical custody plan and applied the law related to consent judgments of custody rather than the law related to considered decrees as set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). The court found that Neil, as the party seeking to modify a consent decree of custody, failed to carry his burden of proving by a preponderance of the evidence either that there had been a change of circumstances that materially affected Savannah's welfare or that a change of custody would be in the best interest of the child. The court then entered an implementation order reducing to writing substantially the plan for physical custody that Neil and Renee had worked out subsequent to their separation.
After specifically designating Renee as the domiciliary parent in the implementation order, the court rejected Neil's position that Renee's choice for Savannah to attend Grace Episcopal School was not in the best interest of Savannah. Regarding child support, the court ordered the child support obligation of Neil to be increased in compliance with the guidelines. The court held that the parties would continue to alternate the dependency exemption for Savannah on all federal and state income tax returns.
From the court's rulings, Neil complains about the child custody arrangement, the school designation, and computation of child support, and Renee assigns error in the allocation of the child dependency exemption.

Discussion
Preliminarily, we note that Neil has assigned error in the failure of the trial court to recuse Renee's counsel, the McLeod Verlander law firm. Neil argues that the law firm, through a former partner, had represented Debi Shaw, Neil's present wife, in her divorce proceedings several years earlier and was therefore privy to confidential personal and financial information creating a conflict in the representation of Renee against Neil. The only relevant information relating to Debi Shaw for this proceeding was the amount and payment of monthly household living expenses since her marriage to Neil for the purpose of determining whether any of Debi's income should be attributed to Neil due to the reduction of his living expenses. Since this information would not have been in existence at the time of Debi's earlier divorce, we do not believe that any conflict existed with the McLeod Verlander firm representing Renee and find no error in the denial of the motion to recuse the firm.

*909 Child Custody

The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731.
In cases such as the present, where the original custody decree is a stipulated judgment and the rule of Bergeron for the burden of proof is inapplicable, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Id. at 738.
La. C.C. art. 134 provides a non-exclusive list of factors which the trial court may consider with all other relevant factors for the determination of the best interests of the child. The consideration of all relevant factors under Article 134 should be followed in actions to change custody, as well as in those to fix custody initially. La. C.C. art. 134, comment (d).
In the June 1994 Judgment on Rule, the court, without receiving any evidence on parental fitness, awarded Neil and Renee joint custody of Savannah. The Joint Custody Plan provided that Renee would have physical custody of Savannah except when Neil had physical custody of the child which would occur at all reasonable times and places. This unspecified physical custody arrangement evolved into Neil having physical custody of Savannah every Thursday afternoon until early evening, every other weekend and 2 two-week periods during the summer with holidays being split by agreement between the parties. Otherwise, Savannah primarily resided with Renee.
Neil now argues that material changes in circumstances have occurred with Savannah's beginning of kindergarten in the fall of 1996 and with more stability in his personal life following his completion of additional college studies and his remarriage. Citing La. R.S. 9:335(A)(2)(b), Neil argues that due to the close proximity of the parties' residences, equally shared physical custody during the school year is feasible and should apply. Finally, Neil argues that since the prior Joint Custody Plan did not name a domiciliary parent, the intent of the 1994 plan was for physical custody to be shared equally.
Initially, we observe that the trial court properly viewed the effect of the existing Joint Custody Plan. The trial court considered the prior loosely worded plan only to the extent that the parties had actually agreed in carrying out a sharing arrangement. The fact that neither party was designated domiciliary parent in the prior plan does not diminish the significance of Renee's actual care and rearing of the child which was predominant under the parties' informal arrangement during the two-year period since the parties' separation. See, La. C.C. art. 134(12). Likewise, the court's action in reducing the former arrangement to writing reveals no modification to the effect of the existing custody order.[1]
Neil's burden was initially to show that a material change in circumstances had occurred. Without elaboration, the trial court found insufficient evidence to support such a finding. From our review of the evidence, we agree with the trial court. Although Savannah's commencement of kindergarten and her longer school hours may now affect the amount of Neil's time with her each Thursday, we do not view this change as material. Longer school hours impact the amount of actual physical time that both parents can enjoy with the child. See, Haik v. Haik, 94-563 (La.App. 5th Cir. 12/14/94), 648 So.2d 1015. Likewise, Neil's completion of school and his new family bonds are not material circumstances which justify a change in the previous custody arrangement. See, Bailey v. Bailey, 527 So.2d 1030 (La.App. 2d Cir. 1988) and Darnall v. Darnall, 95-169 (La. App. 3d Cir. 5/31/95), 657 So.2d 387.
Furthermore, Neil's emphasis on La. R.S. 9:335(A)(2)(b) and the feasibility of an equal sharing during the school year is misplaced. The "equal sharing where feasible" *910 language added by Act 905 of 1993 was enacted by the legislature at the same time that Act 261 made general revisions to our child custody law. See, Darnall v. Darnall, supra. and Rigby, 1993 Custody and Child Support Legislation, 55 La.L.Rev. 103 (1994). Regardless of any initial conflict over the interpretation of the effect of Act 905, the best interest of the child remained the paramount consideration in custody matters, and in 1995 by Act 463, La. R.S. 9:335(A)(2)(b) was further amended emphasizing that paramount principle.[2] So long as "the child is assured of frequent and continuing contact with both parents," the primary goal of joint custody is met. La. R.S. 9:335(A)(2)(a) and (B)(1) and (2). Because of the trial court's mandate and great discretion for considering the best interest of the child, joint custody does not mean a fifty-fifty sharing of time on the strength of feasibility alone. Peters v. Peters, 449 So.2d 1372 (La.App. 2d Cir.1984); La. R.S. 9:335(B)(1) and (2).[3]
In this case the trial court specifically found that an equal sharing of Savannah during the school year would not be in her best interest. His ruling was based in part upon the professional testimony regarding the psychological analysis of the parties. La. C.C. art. 134(7). There was conflict in certain expert testimony regarding the parenting skills and personality traits of Neil, which the trial court could weigh in favor of Renee.
By all accounts, including those of her parents, teachers, Dr. Stephenson and Dr. Jabour, Savannah is a bright and well-adjusted child who is currently flourishing socially and academically. In view of La. C.C. art. 134(4)'s emphasis on maintaining continuity of the child's environment, the trial court's continuance of the existing custody arrangement is in the best interest of the child under the facts presented.
A trial court's determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Warlick v. Warlick, 27,389 (La.App. 2d Cir. 9/29/95), 661 So.2d 706. We find that the trial court was correct in holding that Neil has failed to meet his burden of proof to modify the consent custody order and in reducing the current custody plan to writing to specifically delineate the parties' rights.

Designation of Elementary School
When parties are awarded joint custody, the court shall designate a domiciliary parent unless the implementation order provides otherwise or for other good cause shown. La. R.S. 9:335(B)(1). The domiciliary parent is the parent with whom the child primarily resides. La. R.S. 9:335(B)(2).
The lack of cooperation between these parties which has been increasing can be blamed in part upon the failure of the prior consent ruling to define the decision-making authority. Despite an unsupported argument to the contrary by Neil, the trial court's ruling maintaining joint custody and rendering a joint custody implementation order appropriately designated Renee as the domiciliary parent. La. R.S. 9:335(B)(2). With that designation, the decision-making authority of La. R.S. 9:335(B)(3) became vested in Renee, and the court upheld her choice of Grace Episcopal School over the public school for Savannah's education.
All major decisions made by the domiciliary parent, which would include the choice of schools, are subject to judicial review upon motion by the non-domiciliary parent. La. R.S. 9:335(B)(3). In the judicial review, it is presumed that all major decisions made by the domiciliary parent are in the best interest of the child and the burden of proving they are in fact not in the best interest of the child is placed on the non-domiciliary parent who opposes the decision.
*911 In this case, Neil failed to overcome the presumption of the law that Renee's choice of Grace Episcopal School was in the best interest of Savannah. From our review of the evidence, while we see no substantial educational difference between the schools and agree with Neil that Savannah, as a beginning kindergarten student, had not established a social tie to the school, the legal presumption in favor of Renee's choice must prevail in the absence of evidence showing that attendance at Grade Episcopal School is not in her best interest. We therefore affirm the trial court's ruling regarding this major decision of the domiciliary parent.

Child Support
The trial court determined that the evidence showed a sufficient change of circumstances, namely an increase in Savannah's expenses, to sustain ordering the child support to be modified. After imputing $300 to Neil's monthly income because he lives in his current wife's home, the court used the parties' respective incomes and applied the child support guidelines. La. R.S. 9:315.14. The court then added the tuition for Grace Episcopal School and the average cost of Savannah's day care in order to calculate each party's child support obligation. The trial court ordered Neil to pay $602.41 per month for Savannah's support. Neil assigns various errors in the trial court's calculation.

(1) Calculation of Neil's Salary
Neil first contends that the trial court inadvertently identified his monthly salary as $2,514 when Neil's worksheet confirms that his salary is $2,419. We disagree. The trial court stated that it would consider the money Neil receives from announcing regular season varsity football games at Neville High School as part of his monthly income. On Neil's worksheet, he identified his base salary from KNOE-TV as $2,419 per month and his fee for announcing the Neville games as $138 per month. However, Neil testified that his computation of the announcing fee assumed that Neville would participate in one playoff game. The trial court, intending to include only regular season and not playoff games, apparently added $95 per month to Neil's base salary in consideration of the payments Neil receives for announcing the football games. We find no error in this calculation.

(2) Imputation of Income
Neil next complains that the trial court imputed $300 per month to his income because he lives in his current wife's home. The evidence showed that Neil and his current wife, Debi, deposit all their money into a joint account and pay their expenses without keeping records of whose income pays which expenses. Neil argues that without credible evidence in the record concerning his expenses, Debi's income and her expenses, the trial court did not have the ability to determine any alleged expense savings.
In determining the benefits of expense sharing, the court can only consider the income of another spouse to the extent that such income is used directly to reduce the cost of a party's actual expenses. See La. R.S. 9:315(6)(e); LaForge v. LaForge, 26,317 (La.App. 2d Cir. 1/25/95), 649 So.2d 151; Rosenbloom v. Rosenbloom, 94-1762 (La.App. 4th Cir. 4/26/95), 654 So.2d 877, writ denied, 95-1320 (La.9/1/95), 658 So.2d 1266. When Neil and Debi married, Neil moved into her home and was thus able to eliminate his housing cost by selling the house in which he previously lived. Even without keeping records on the payment of expenses, it is obvious that residing in Debi's house reduces Neil's living expenses. Therefore, we find that the trial court did not err in imputing $300 per month to Neil's income.

(3) Calculation of Renee's Income
Neil next alleges that the trial court erred by failing to impute monthly income to Renee because her employer furnishes her a uniform to wear to work and pays her insurance premiums. Additionally, Renee can take advantage of half-priced meals at certain restaurants while wearing her uniform. While there was testimony from Richard Lee Fewell, Sr., a retired chief deputy, as to the average amount of money Renee's employer spent per year on employee uniforms, there was no evidence as to the amount the employer had actually spent on Renee. Furthermore, the trial court could properly view this expense reimbursement as insignificant in reducing Renee's personal living expenses *912 so as to fall outside of the definition of income under La. R.S. 9:315(4)(b). Likewise, Renee's ability to receive half-price meals while in uniform does not qualify under La. R.S. 9:315(4)(b) as an expense reimbursement or in-kind payment received "in the course of employment."
Regarding the issue of health insurance premiums, Renee's employer pays all of her premiums. In the definition of "health insurance premiums" in the statute, it specifically excludes any amount paid by an employer. See La. R.S. 9:315(5). Therefore, from the implication of La. R.S. 9:315.4, the trial court's failure to consider the cost of health care premiums in computing the total child support obligation was correct.
In summary, we find that the trial court did not err in refusing to impute additional income to Renee because of the uniform, payment of health insurance premiums and cost reduction for meals.

(4) Sale of Health Food
Neil also alleges that the trial court failed to include as income to Renee substantial monies received from the sale of health food and supplements. There was conflicting testimony on this issue. While Neil claimed that Renee had derived approximately $1,089 over the eighteen months preceding the trial from such sales, Renee testified that she allowed her boyfriend to use her credit card to charge the health food which he then sold reimbursing her for all the charges. Renee emphatically stated that she did not receive any benefit from allowing her boyfriend this accommodation.
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell v. ESCO, 549 So.2d 840 (La.1989). Upon review of the record and finding a reasonable basis for the trial court's conclusion that Renee did not receive money from the sale of the health food and supplements, we find no error in the trial court's refusal to include these amounts in Renee's income.

(5) Net Day Care Costs
Neil asserts that the definition of "net child care costs" specifically provides that the cost of day care shall be reduced by the value of the federal income tax credit and that the trial court failed to make this statutorily mandated adjustment. See La. R.S. 9:315(7). Renee testified that the $217 per month for day care cost listed on her worksheet and used by the court in its calculation had already been reduced by the value of the tax credit for child care. There was no evidence presented that this was inaccurate.[4] Accordingly, the trial court did not err in accepting the figure provided by Renee without making other adjustments.

(6) Inclusion of Private School Tuition
Private school tuition is a special or extraordinary expense that may be added into the computation of the total child support obligation upon compliance with La. R.S. 9:315.6(1). This statute provides:
§ 315.6. Other extraordinary expenses; addition to basic obligation.
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child.
As indicated above, the evidence presented by both parties regarding the public and private elementary schools did not demonstrate that either school would be deficient in any respect. Both schools appear to provide excellent elementary education. Additionally, despite Savannah's attendance in a preschool program at Grace Episcopal School prior to her commencement of kindergarten, we are unpersuaded by the argument that her social tie to the school means that the school will be better able to fulfill the "particular *913 educational needs" of this beginning kindergarten student. Neil's complaint in this case regarding the cost of the private school was made before Savannah's commencement of kindergarten when the option between public school and private school first became available.
Based upon the facts of this case, we find that Renee has not satisfied the burden of proving that the private school fulfills the particular educational needs of Savannah in a different manner from the public school. The trial court's ruling fails to justify the addition of this special expense to Neil's support obligation.
While our ruling regarding the cost of tuition contrasts from our above affirmance of Renee's choice of the private school, the burdens of proof are different. Renee's choice as the domiciliary parent is presumed in the best interest of Savannah even though from an educational standpoint, both schools were shown as equal. The best interest of the child includes concerns other than merely educational concerns. Moreover, the law's policy regarding the domiciliary parent defers to Renee's parental choice and her weighing of less substantive matters absent Neil's showing that the best interest of the child's education is harmed. On the other hand, in order for the special charge for private school tuition to be added to Neil's basic child support obligation, Renee must prove that particular educational needs are met only through the private school.
In reaching this result, we note the case of Settle v. Settle, 635 So.2d 456 (La.App. 2d Cir.1994) and cases cited therein where the courts included in the support obligation the cost for private school tuition out of concern for the social disruption of the change of schools to the lives of the children. Whether or not that concern might impact the particular educational need of the child in a given situation, we hold that for this beginning student under the circumstances of this case, the statutory test was not met.[5]
In summary, based upon the parties' combined gross income of $5,684, the basic child support obligation per month is $767 per month, to which is added the net child care cost of $204 per month. Neil's share of this amended total child support obligation is $480.65 per month.

Renee's Answer to Appeal
Renee answers the appeal claiming that the trial court erred in not allowing her the dependency exemption for Savannah every year on all federal and state income tax returns because Neil's support obligation does not equal 50% or more of the total child support obligation. See La. R.S. 9:315.13. In the case sub judice, Neil's support obligation is 49.50% of the total support obligation. Therefore, the statutory presumption is that the domiciliary parent, Renee, is entitled to claim Savannah on her tax forms. Instead, the trial court allowed Neil to claim Savannah as a dependent in alternating years. See La. R.S. 9:315.1(B). The court articulated that this was fair because it was not ordering (pursuant to La. R.S. 9:315.8 E) any reduction in the monthly child support Neil was required to pay even though he would have physical custody of Savannah for significant periods of time. We conclude that there is adequate support in the record for the trial court's articulated deviation. See Warlick v. Warlick, supra; Greene v. Greene, 93-789 (La.App. 3d Cir. 3/2/94), 634 So.2d 1286. Therefore, we find Renee's argument to be without merit.

Conclusion
Accordingly, for these reasons, we amend the judgment to provide that Neil shall pay Renee $480.65 per month child support retroactive to the date of filing with credits for all amounts paid as child support since that date and in all other respects, the trial court's decision is affirmed. The costs of this appeal shall be shared equally between the parties.
AFFIRMED IN PART, AMENDED IN PART, AND RENDERED.
*914 HIGHTOWER, J., with respect to the private school tuition issue, concurs only in the result.

APPLICATION FOR REHEARING
Before HIGHTOWER, BROWN STEWART, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] The court, in its order, did actually award Neil an additional two-week period of physical custody of Savannah during the summer (for a total of 6 weeks or half the summer) which Renee has not assigned as error.
[2] Act 463 amended La. R.S. 9:335(A)(2)(b) by adding the following phrase shown with emphasis and changing to "should" the former "shall" following the word children:

To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
[3] The implication of La. R.S. 9:335(B)(1) and (2) is that most joint custody decrees will invariably result in the child primarily residing with one parent more than the other. Nevertheless, the goal of joint custody is upheld so long as the non-domiciliary parent is assured of frequent and continuing contact with the child.
[4] We do note, however, that with the trial court's ruling awarding Neil six weeks of physical custody of Savannah during the summer, Renee will only have to pay for six weeks of summer daycare instead of the eight weeks listed on the worksheet. Our calculations show that 40 weeks of school year daycare at $50 per week and 6 weeks of summer daycare at $75 per week, prorated over the 12 month period, equals $204 per month.
[5] We also note that this court's decision in Settle was by a very thin margin with the concurring opinion of Judge Sexton noting that no specific educational need was shown. Judge Victory dissented from the ruling emphasizing that educational needs must be shown, regardless of the disruptions to social settings caused by divorce.