LAUREN RANDAZZA

VERSUS

PIETRO M. GIACONA

NO. 20-CA-439

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 792-773, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

March 24, 2021

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Hans J. Liljeberg

**<u>AFFIRMED</u>**
 **JGG**
 **FHW**
 **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
LAUREN RANDAZZA
    Keith R. Credo

COUNSEL FOR DEFENDANT/APPELLANT,
PIETRO M. GIACONA
    Christy M. Howley
    M. Elizabeth Bowman

**GRAVOIS, J.**

Pietro M. Giacona, appellant, and Lauren Randazza, appellee, could not agree on a school of choice for their three-year-old daughter Mila to attend. After unsuccessfully attempting to mediate the issue with their parent coordinator, the matter was brought before a domestic hearing officer on July 16, 2020, who recommended the school selected by Ms. Randazza. This recommendation was made an Interim Judgment of the Court on July 20, 2020. Mr. Giacona timely objected, and the matter was tried *de novo* before the district court on August 5, 2020. On that date, the district court issued a judgment holding that the minor child shall attend St. Anthony of Padua School in New Orleans, Louisiana, the same school recommended by the hearing officer and selected by Ms. Randazza. Mr. Giacona's timely appeal followed. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Randazza and Mr. Giacona had a romantic relationship but never married. Their daughter Mila was born on June 2, 2017. The relationship ended in September of 2018. While the parties were a couple, they lived on the east bank of Jefferson Parish in Old Jefferson, with Ms. Randazza being employed as a teacher in Kenner and Mr. Giacona being employed with a governmental contractor on the naval base in Belle Chasse.[1] Following their break up, Mr. Giacona moved his home to the naval base, while Ms. Randazza's home remained on the east bank of Jefferson Parish.

Ms. Randazza filed a Petition for Custody and Support on March 6, 2019, to which Mr. Giacona reconvened. After a custody evaluation with Dr. Karen Van Beyer, the matter came for a hearing before the domestic commissioner on August 6, 2019 and August 23, 2019. On August 23, 2019, pursuant to the hearing, the

---

[1] Belle Chasse is located in Plaquemines Parish on the west bank of the Mississippi River, immediately adjacent to the west bank of Jefferson Parish.

parties entered into a Consent Judgment. While not awarding "domiciliary custody" to either parent, as per Dr. Van Beyer's evaluation and report, the Consent Judgment stated that "the parties, Lauren Randazza and Pietro M. Giacona, should be awarded joint custody with equal shared physical time of the minor child, Mila Giacona. Lauren Randazza shall be in charge of religious and educational decisions for the child, in consultation with Pietro M. Giacona." (Emphasis added.) Ms. Randazza is a teacher. Her master's degree in early childhood intervention, plus her practice of Catholicism, provided the basis for this term of the Consent Judgment.[2]

The Consent Judgment reflected that the parties would share physical custody of their daughter on a "2/2/3" basis. The Consent Judgment stated that they agreed to send Mila to Christ the King School in Terrytown, which is located on the west bank of Jefferson Parish, which she in fact attended for the 2019-20 school year.[3] However, Christ the King School closed permanently following the 2019-20 school year, and the parties had to find a new school for their child to attend. Mr. Giacona recommended several schools on the west bank of Jefferson Parish, which he narrowed down to two schools, Immaculate Conception School, located in Marrero, and St. Rosalie School, located in Harvey. Ms. Randazza recommended St. Anthony of Padua's preschool, which is located in the Mid-City neighborhood of New Orleans on Canal Street.[4] Unable to come to an agreement, the parties engaged the services of Terri Campesta, the parenting coordinator with whom they had previously worked. Ms. Campesta attempted to mediate an agreement between the parties on a school choice, but was unsuccessful.

---

[2] In addition, Ms. Randazza has a second master's degree in counseling. It is explained in the record that Mr. Giacona is not active in any particular faith.

[3] The parties selected Christ the King School after considering several other schools on both the east and west banks.

[4] Ms. Randazza explained that she did not include the other schools she had previously recommended before they chose Christ the King School, because those schools had already been considered and turned down the year before.

Ultimately, after considering the schools each party chose, Ms. Campesta issued a report finding that the most "feasible" schools were either Immaculate Conception School or St. Rosalie School on the west bank, but she declined to formally recommend either school as she believed such a recommendation would impact Mr. Giacona's child support obligation, which was beyond the scope of her authority. Among other things affecting her endorsement, Ms. Campesta considered the distances Mila would have to commute while in each parent's care, the availability of Mila's speech therapy at the different campuses, a comparison of the cost of tuitions, and the availability of before-care and after-care at each school.

On June 18, 2020, Ms. Randazza filed a Rule to Determine School Choice, citing the parties' unsuccessful attempt at mediation with Ms. Campesta, and alleging that Mr. Giacona's objections to St. Anthony of Padua School were based on his convenience and financial concerns, rather than on Mila's best interest. On July 7, 2020, Mr. Giacona filed a Motion to Designate School, for Incidental Matters, and for Attorney Fees and Court Costs. The parties went before the hearing officer on July 16, 2020, who recommended that the minor child attend the school selected by Ms. Randazza, St. Anthony of Padua's preschool. This recommendation was made an Interim Judgment of the Court on July 20, 2020. Mr. Giacona timely objected to the Interim Judgment.

The matter was then heard in a trial *de novo* by the district court judge on August 5, 2020, who received the parties' testimonies, as well as the testimony of Ms. Campesta, the parenting coordinator. The witnesses testified regarding the virtues and drawbacks of the different schools, including the distances and commute times between the schools and the parties' residences/work places. The trial court also received the report of Ms. Campesta, a letter from Mila's speech therapist, documentary evidence showing the tuition rates of the schools, as well as the hearing officer's recommendations and stipulations of August 6, 2019, the

Consent Judgment of August 23, 2019, the hearing officer's recommendation of July 16, 2020, and the July 20, 2020 Interim Order of the Court. At the close of trial, the court ruled from the bench, citing the provisions of the August 23, 2019 Consent Judgment that placed Ms. Randazza in charge of educational and religious decisions, and affirmed the hearing officer's Interim Judgment that Mila should attend St. Anthony of Padua School, the school selected by Ms. Randazza. A written judgment was signed that same day.[5] Mr. Giacona filed this timely appeal.

On appeal, Mr. Giacona argues first that the trial court erred in giving unilateral educational decision-making power to Ms. Randazza, when she is not the domiciliary parent. Second, he argues that the trial court erred in placing a rebuttable presumption burden of proof on Mr. Giacona, when no domiciliary parent was designated. Third, he argues that Ms. Randazza failed to meet her burden of proof that her "unilateral" selection of St. Anthony of Padua School was in Mila's best interest. Fourth, he argues that the trial court's alleged *ex parte* communication with Dr. Van Beyer, the custody evaluator, was improper.

## STANDARD OF REVIEW

A trial court's determination in a child custody case will not be disturbed unless there is a clear abuse of discretion. *Schmidt v. Schmidt*, 02-885 (La. App. 5 Cir. 1/14/03), 839 So.2d 150, 152. An appellate court is required to extend great weight to the factual conclusions of trial courts which are based on reasonable evaluations of credibility and reasonable inferences of fact. *Id.*, citing *Rosell v. ESCO*, 549 So.2d 840 (La. 1989).

## FIRST AND SECOND ASSIGNMENTS OF ERROR

Mr. Giacona argues first that the trial court erred in giving "unilateral" educational decision making power to Ms. Randazza, when she is not the

---

[5] This Judgment incorrectly refers to the hearing officer's recommendation as having been made on July 18, 2020, rather than on July 16, 2020.

domiciliary parent. Second, he argues that the trial court erred in placing a rebuttable presumption burden of proof on Mr. Giacona, when no domiciliary parent was designated. Because these assignments of error relate to the issue of what it means to be a domiciliary parent, they are considered together.

La. R.S. 9:335 is entitled in part "Joint custody decree and implementation order." It provides among other things that "[t]he implementation order shall allocate the legal authority and responsibility of the parents," and that "[i]n a decree of joint custody, the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown." *See* La. R.S. 9:335(A)(3) and (B)(1). Further, paragraph (B)(3) of the statute states that "[t]he domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child." Finally, paragraph (C) of the statute states that "[i]f a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code."

The parties entered into a Consent Judgment on August 23, 2019 that placed Ms. Randazza "in charge of" educational and religious decisions for the minor child, "in consultation with" Mr. Giacona.[6] In *Rousset v. Rousset*, 14-663 (La.

---

[6] Though Mr. Giacona appeals the judgment of the court which determined that the minor child should attend the school selected by Ms. Randazza, it is important to point out that nowhere in the pleadings does Mr. Giacona seek to modify or nullify this *term* of the Consent Judgment itself that placed Ms. Randazza "in charge of religious and educational decisions for the child."

App. 5 Cir. 4/15/15), 170 So.3d 253, 256, this Court summarized the law applicable to consent judgments as follows:

> A consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing the hope of gain against the fear of loss. [La.] C.C. art. 3071. As such, it should be governed by the same rules of construction that apply to contracts. *Nelson v. Nelson*, 08-85 (La. App. 5 Cir. 6/19/08), 985 So.2d 1285, 1290.

> A compromise agreement which forms the basis for a consent judgment gets its binding force and effect from the consent of the parties. The interpretation of the consent judgment is the determination of the common intent of the parties. [La.] C.C. art. 2045; *Nungesser v. Nungesser*, 95-2298 (La. App. 1 Cir. 6/28/96), 694 So.2d 312, 314. The meaning and intent of the parties is ordinarily determined from the four corners of the instrument. *Millet v. Millet*, 04-406 (La. App. 5 Cir. 10/26/04), 888 So.2d 291, 293. Each provision in the contract is interpreted in light of the other provisions so that each is given the meaning suggested by the contract a whole. When the words of a contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract. [La.] C.C. art. 2046; *Sutherlin v. Sutherlin*, 05-535 (La. App. 5 Cir. 2/3/06), 930 So.2d 51, 53.

In light of this jurisprudence, it is apparent that the Consent Judgment controls the rights and responsibilities of the parties in this case, notwithstanding any reports or custody evaluations that took place prior to the confection and entry of the Consent Judgment and on which the Consent Judgment may have been based in whole or in part. Further, the term of the Consent Judgment stating that "Lauren Randazza shall be in charge of religious and educational decisions for the child, in consultation with Pietro M. Giacona" is clear and explicit.

In this particular case, the Consent Judgment does not name either parent as the domiciliary parent. As per La. R.S. 9:335, this is permissible based upon Dr. Van Beyer's recommendation, in her report, that neither parent should be so designated.[7] Thus, although neither party was designated as domiciliary parent, the Consent Judgment's term placing Ms. Randazza "in charge of" religious and

---

[7] Dr. Van Beyer's report was not introduced into evidence in whole at the trial *de novo* conducted on August 5, 2019. A two-page excerpt of what appears to be Dr. Van Beyer's report is found in exhibit P-8, which contains the Hearing Officer's recommendations and stipulations from August 6, 2019.

educational decisions for the minor child gave her the same rights, *by analogy*, as a domiciliary parent for those particular issues. Accordingly, the law on the scope of a domiciliary parent's decision making power is instructive to our analysis.

Contrary to Mr. Giacona's arguments both in the trial court and in brief, the domiciliary parent's decision making authority is not unilateral, nor absolute. As previously stated, all major decisions made by the domiciliary parent, which would include the choice of schools, are subject to judicial review upon motion by the non-domiciliary parent. La. R.S. 9:335(B)(3); *Shaw v. Shaw*, 30,613 (La. App. 2 Cir. 6/24/98), 714 So.2d 906, 910, *writ denied*, 98-2414 (La. 11/20/98), 729 So.2d 556, and *writ denied*, 98-2426 (La. 11/20/98), 729 So.2d 558. *See also Duhe v. O'Donnell*, 15-683 (La. App. 5 Cir. 5/26/16), 193 So.3d 455, 459, citing *Walden v. Walden*, 00-2911 (La. App. 1 Cir. 8/14/02), 835 So.2d 513.

Here, Mr. Giacona was afforded judicial review by a hearing *de novo* in the district court, as well as appellate review by this Court. Thus, his argument that Ms. Randazza was afforded unilateral decision making authority, contrary to law, is without merit.

Mr. Giacona also points out that the Consent Judgment appointed a parent coordinator (Ms. Campesta) to mediate custody/visitation issues in the event the parties could not agree on a particular issue. The Consent Judgment did not state, however, that the parent coordinator would have decision-making power in the event the parents could not agree. The record shows that Ms. Campesta did indeed attempt to mediate an agreement on the school choice issue, as per the Consent Judgment, but was unsuccessful in this regard. In fact, as noted above, Ms. Campesta acknowledged that she could not formally recommend either Immaculate Conception School or St. Rosalie School, as she believed such a recommendation would impact Mr. Giacona's child support obligation, which was beyond the scope of her authority.

Next, Mr. Giacona argues that it was error to place a "rebuttable presumption" burden of proof upon him. However, we find no error in this regard. In the judicial review of the domiciliary parent's major decisions, it is presumed that all major decisions made by the domiciliary parent are in the best interest of the child and the burden of proving they are in fact not in the best interest of the child is placed on the non-domiciliary parent who opposes the decision. *Shaw v. Shaw*, 714 So.2d at 910. Thus, the law is clear that in this particular case, while Ms. Randazza is not the domiciliary parent, she enjoys a rebuttable presumption that her choice of school is in their daughter's best interest, based upon the terms of the Consent Judgment and La. R.S. 9:335, which presumption Mr. Giacona was required to rebut in order to prevail. Accordingly, there is no merit to this assignment of error that the rebuttable presumption was misplaced.

## THIRD ASSIGNMENT OF ERROR

Mr. Giacona argues that Ms. Randazza failed to meet her burden of proof that her "unilateral" selection of St. Anthony of Padua School was in Mila's best interest. However, as noted above, the burden of proof was on Mr. Giacona to rebut Ms. Randazza's choice of school, rather than it being her burden of proof to justify her choice of school was in Mila's best interest. For the following reasons, we find that Mr. Giacona did not rebut the presumption in favor of Ms. Randazza's choice of school.

The parties presented evidence in support of their school choices, as described previously, which outlined the virtues and drawbacks of St. Anthony of Padua School and the two schools on the west bank selected by Mr. Giacona. Mr. Giacona testified that he selected possible schools on the basis of first, reducing Mila's previous commuting time to and from Christ the King on Ms. Randazza's days, and second, the availability of before-care and after-care, speech therapy, as well as the "religious aspect they want." The record further shows that Ms.

Randazza's choice of schools was based first upon the excellence of the curriculum and educational opportunities, as well as a school that was Catholic and as equidistant as possible to the parties' homes. She also expressed that it would be easier for her to become involved with parish life at St. Anthony than at the two west bank church parishes.

The record shows that Ms. Randazza willingly provided accommodation for Mr. Giacona's concerns, including covering his possible occasional inability to pick Mila up before after-care ended due to work or traffic, the availability of her speech therapy on the east bank, and the increased costs associated with St. Anthony of Padua School.

Mr. Giacona focused on the distance both he and Mila would have to travel on days he exercised physical custody, because of the necessary commute across the Mississippi River from his home in Belle Chasse to the Mid-City neighborhood of New Orleans, where St. Anthony of Padua School is located. While the commute is an important factor, the trial court noted that the schools on the west bank would involve similar commuting issues for Mila while in Ms. Randazza's custody, and had in fact involved that same issue while Mila attended Christ the King. At the hearing in the trial court, Ms. Randazza testified that she would be able to enlist help from her parents and family in picking up Mila from St. Anthony of Padua on Mr. Giacona's days if work requirements or bridge traffic prevented him from collecting her prior to the end of after-care, which closed earlier than the after-care offered at the two west bank schools. Ms. Randazza stated that she also made arrangements for Mila's speech therapy to continue at another location on the east bank. (Previously, Mila's speech therapist saw her at Christ the King.)

Mr. Giacona objected to St. Anthony of Padua School on several other bases, not only the commute time. He stated that St. Anthony of Padua's facility

for the pre-school was a small repurposed building, unlike the "beautiful new and updated" building at Immaculate Conception School.[8] He also noted that Mila would have to apply to Christian Brothers School next year, but would not have to reapply if accepted at Immaculate Conception School for pre-school, as the school continued to the elementary grades.[9] He noted that the principal at Immaculate Conception School told him that many students from Christ the King were enrolling at Immaculate Conception School, which meant that Mila would know other students, unlike at St. Anthony of Padua. He also noted that the tuition cost of St. Anthony of Padua/Christian Brothers was considerably more than at Immaculate Conception School, as well as their before-care and after-care offerings provided less coverage and were more expensive. In response, Ms. Randazza agreed that she would bear the difference in tuition costs and after-care costs that Mr. Giacona would have paid at his choices of schools, so that his financial obligation would not increase.

Ms. Randazza testified to the excellent curriculum at St. Anthony of Padua, as well as the excellent curriculum and highly regarded reputation at Christian Brothers School, the elementary school located adjacent to St. Anthony of Padua and where many of its students matriculate after attending St. Anthony of Padua. Ms. Randazza also investigated the curriculum of Immaculate Conception, which she described as being based on "standards" but not the type of curriculum or methods offered at St. Anthony, which in her opinion were superior. Without any denigration of Mr. Giacona's chosen schools, the trial court concurred with the evidence provided by Ms. Randazza regarding the superior reputation of Ms. Randazza's school choice and its long-term importance in Mila's education.

---

[8] Though Mr. Giacona recommended two schools, the hearing tended to focus more on Immaculate Conception School than St. Rosalie School.

[9] Ms. Randazza testified that she was told that students at St. Anthony of Padua School were preferred for enrollment to Christian Brothers School.

Accordingly, after considering the evidence in the record, we find that Mr. Giacona failed to overcome the presumption of the law that Ms. Randazza's choice of school was in the best interest of Mila. While he showed that his choice of school was more convenient for him, he did not show that Mila's attendance at St. Anthony of Padua School was not in her best interest. He also did not show that as a whole, Immaculate Conception School was a better choice for Mila. The legal presumption in favor of Ms. Randazza's choice must prevail in the absence of evidence showing that attendance at St. Anthony of Padua School is not in Mila's best interest. Upon review, per *Schmidt v. Schmidt*, *supra*, we find no abuse of discretion in the trial court's judgment. This assignment of error is without merit.

## FOURTH ASSIGNMENT OF ERROR

Finally, Mr. Giacona argues on appeal that the trial court had an *ex parte* communication with Dr. Van Beyer, the author of the custody evaluation, on the morning of the trial *de novo*. He argues that the trial court's reliance on the custody evaluator's report that was changed when the parties consented, and which report was not entered into evidence by either party, constituted an overreach of the court's authority.

In brief, Mr. Giacona refers to a "veiled" reference made by the trial court during the hearing that could possibly be construed that the trial court *may have communicated* with Dr. Van Beyer on the morning of the trial *de novo* regarding her report. Having thoroughly reviewed the entire transcript, we find that it is not at all clear from the record as to whether the trial court did in fact have an *ex parte* communication with Dr. Van Beyer. In any event, neither party objected and neither party sought to call Dr. Van Beyer as a witness or to keep the record open for introduction of her testimony or her complete report. As such, this assignment of error was not preserved for appellate review.

Further, our thorough review of the record and transcript shows clearly that the trial court relied upon the Consent Judgment in her ruling, not a report that was not entered into evidence, or an alleged *ex parte* communication with the author of that report. As stated previously, the Consent Judgment controls the rights and responsibilities of the parties herein and the terms of the Consent Judgment are clear and explicit. This assignment of error is without merit.

## **DECREE**

For the foregoing reason, the judgment of the trial court under review is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 24, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 20-CA-439

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
KEITH R. CREDO (APPELLEE)        CHRISTY M. HOWLEY (APPELLANT)        M. ELIZABETH BOWMAN (APPELLANT)

**MAILED**
NO ATTORNEYS WERE MAILED