FREDERICKS HOMBERG WICKER, Judge.
|2In this domestic matter, Pamela Mari-novich Short appeals two judgments. First, Ms. Short appeals the judgment following this Court’s remand, Short v. Short, 09-639, p. 15 (La.App. 5 Cir. 3/23/10), 33 So.3d 988, 997, writ denied, 10-1086 (La.9/3/10), 44 So.3d 688, wherein the trial judge ruled on remand that David Allen Short was not liable for a pro rata share of private school tuition (“tuition judgment”).[1] Second, Ms. Short appeals the judgment wherein the trial judge determined the parties did not enter into a valid Covenant Marriage (“Covenant Marriage judgment”).[2] This case presents two issues for our review: (1) Was the trial judge manifestly erroneous in finding that the parties failed to meet the statutorily-mandated requirements for a valid covenant marriage? (2) Was the trial judge manifestly erroneous or did he abuse his discretion in finding that Ms. Short failed to meet her burden in proving that an education at Kehoe-|Francea was necessary to meet the children’s needs? Finding no manifest error or abuse of discretion in the trial judge’s findings, we affirm.

Procedural History

Covenant Marriage Proceedings

These parties were married in 1997. In 2006, Ms. Short filed a petition for separation and other relief in which she asserted the parties contracted a Covenant Marriage and Mr. Short was guilty of cruel treatment in breach of the Covenant Marriage contract. In 2008 the parties were divorced pursuant to La.C.C. art. 103(2) based on testimony from Ms. Short that, in August 2007, she and her three children *408 had moved in with Randy Menendez with whom she has a sexual relationship. Short, 09-639 at 4, 33 So.3d at 990.
Mr. Short filed various pleadings (including petitions for divorce) objecting to the assertion that the parties had contracted a Covenant Marriage.
Before considering Mr. Short’s latest divorce petition asserting Ms. Short’s alleged adultery, the trial judge conducted evidentiary hearings to determine whether the parties entered into a valid Covenant Marriage. In a ruling rendered in open court on March 18, 2008, and reduced to writing and signed on July 7, 2008, the trial court found that the parties did not enter into a Covenant Marriage. Ms. Short filed a timely motion for new trial, which the trial judge denied in open court on August 4, 2008. That judgment was not reduced to writing and signed until August 18, 2010, after the Louisiana Supreme Court denied writs in the former appeal.[3] Short, 10-1086 (La.9/3/10), 44 So.3d 688. Until then any appeal from the Covenant Marriage judgment was premature. See: La.C.C.P. art. 1914(C).
| .(Previously, we pretermitted a discussion of the validity of the Covenant Marriage presented by Ms. Short’s answer to the former appeal, finding that matter was not before this Court. Short, 09-639 at 7, 33 So.3d at 993. We find that the issue is now ripe for review.

Tuition Proceedings

Mr. and Ms. Short share joint custody with Ms. Short as the domiciliary parent. Three children were born of the marriage: Anthony, Sarah, and Amanda.
The children had been homeschooled but in 2007, Ms. Short enrolled them in a private school — Kehoe-France on the North Shore — at a cost of approximately $15,000 to $18,000 per year. In July 2008, the trial court found that Mr. Short was responsible for 94% of the children’s tuition costs as extraordinary expenses added to the basic child support obligation, La. R.S. 9:315.6(1), for the school year 2007-08. However, based on Ms. Short’s failure to notify Mr. Short of the enrollment of the children in Kehoe-France school on the North Shore in advance, the trial court limited Mr. Short’s obligation for the children’s tuition and other expenses to Mr. Short’s proportionate share of the tuition of St. Christopher School in Metairie.
Mr. Short filed a motion for partial new trial on the issue of private school expenses. The trial court granted that motion in part and altered Mr. Short’s obligation to exclude the youngest child, Amanda, who was not yet in Kindergarten. At the time, Anthony and Sarah were in first grade and Kindergarten, respectively.
After the trial judge originally ruled that Mr. Short was responsible for his proportionate share of the tuition of St. *409 Christopher School, Mr. Short filed an | -,objection to Ms. Short’s enrolling the children in Kehoe-France for the following 2008-09 school year. This objection addressed itself to where the children were to attend school, not to who would pay the tuition. That motion was heard on August 4, 2008. In open court, after hearing testimony, the trial judge denied the motion. Although Mr. Short originally appealed the tuition ruling, at that time the later ruling pertaining to the school the children would attend rather than tuition responsibility was not reduced to writing until August 18, 2010, after the Louisiana Supreme Court denied writs in the former appeal. Short, 10-1086 (La.9/3/10), 44 So.3d 688. In that later written ruling, the trial judge denied Mr. Short’s opposition to the children attending Kehoe-France for the 2008-09 school year. Mr. Short has not appealed that judgment. In addition, that judgment was not before us in the former appeal. Thus, the former appeal addressed only whether Mr. Short should pay his pro rata share of the tuition cost, not where the children would attend school.
In our previous opinion, we found an abuse of discretion in the ruling ordering Mr. Short to pay his proportionate share of tuition at Kehoe-France using the tuition at St. Christopher School as a base. We vacated that judgment and remanded the matter to the trial court for a finding on tuition that was consistent with the law. Short, 09-639 at 14, 33 So.3d at 996.
On remand, the trial court did not receive additional evidence or testimony. The trial judge ruled that Mr. Short was not liable for a pro rata share of private school tuition. At the time of our remand order, there was only one hearing concerning tuition — March 18, 2008. In contrast, the August 4, 2008 hearing concerned Mr. Short’s objection to the choice of school for the following year.
| ⅛Analysis

Covenant Marriage Judgment

Mr. Short argues that Ms. Short is barred from challenging the Covenant Marriage judgment based on the “law of the case” principle[4] because Ms. Short raised it in her answer to the former appeal, and we addressed the issue.
That argument fails for two reasons.
First, we made no ruling on the merits regarding the validity of the Covenant Marriage. We declined to consider the issue because our jurisdiction was restricted to the two judgments on appeal, neither of which contained a ruling on the Covenant Marriage. Short, 09-639 at 7, 33 So.3d at 992.
Second, going beyond the narrow issue of whether Ms. Short’s answer was properly before the Court, we added a statement that the Covenant Marriage judgment was final. Short, 09-639 at 7, 33 So.3d at 992. Our statement that the judgment was final was obiter dictum and therefore did not constitute “law of the case.”[5] Because obiter dictum is, by definition, not essential to the judgment of the court which states the dictum, it is not the “law of the case.” Ex parte Williams, 838 *410 So.2d 1028, 1030 (Ala.2002) citing Gray v. Reynolds, 553 So.2d 79, 81 (Ala.1989).
Therefore, Ms. Short is not barred from challenging the Covenant Marriage judgment.
|7The Covenant Marriage Act, La. R.S. 9:272 et seq., was enacted effective July 15, 1997 by 1997 La. Acts No. 1380. Six weeks later, the office of the registrar of vital records for the Parish of Orleans issued the Shorts’ marriage certificate.[6] Nine days later, Reverend John W. Zim-mer, Jr. performed the marriage ceremony.
In order to perfect a valid Covenant Marriage, the parties must comply with statutory mandates. La. R.S. 9:273(A)(2)(a); La. R.S. 9:273. In this case, Ms. Short relied on the certified copy of the marriage certificate as proof of a valid Covenant Marriage.[7] In particular, she relied on the parties’ signed statement contained[8] therein, stating: “We do hereby declare our intent to contract a Covenant Marriage and, accordingly, have executed a declaration of intent attached hereto.”[9] There was, however, no attached documentation and Mr. Short denied signing the statement. The trial judge recognized that as a result of Hurricane Katrina, the New Orleans Parish Bureau of Vital Records could not produce the attached supporting documents, if these existed.
[8Mr. Short and Reverend Zimmer testified at the hearing. Ms. Short introduced into evidence without objection Reverend Zimmer’s affidavit executed on May 17, 2006.
Reverend Zimmer testified that he signed the affidavit attesting that prior to the parties’ marriage in 1997, he conducted the marital counseling session with them as required to enter into a Covenant Marriage. The affidavit also stated that the *411 Reverend attested that prior to the marriage between the parties, he signed the attestation clause of the Declaration of Intent to enter into a Covenant Marriage, which had been executed by the parties.
At the hearing, however, Reverend Zim-mer testified differently. He testified that he did not specifically recall meeting with these parties or how soon he met with them before performing the ceremony. He was uncertain whether the parties signed a notarized form attesting that they had a discussion with him about the Covenant Marriage. He kept no records of the “very few” Covenant Marriages that he performed. He did not have any informative pamphlets that he either read and/or provided to the parties when he allegedly met with them for the premarital counseling. Reminded that he was under oath, he replied that he could not be certain that he met with Mr. Short for premarital counseling prior to the wedding date in accordance with the Covenant Marriage Act.
Mr. Short testified that he never received premarital counseling from Reverend Zimmer regarding a Covenant Marriage. He stated that the first time he met Reverend Zimmer was the night of the ceremony, although Reverend Zimmer might have been at the rehearsal dinner. He testified that he absolutely never signed a Declaration of Intent to enter into a Covenant Marriage. He did not recall ever seeing a document that was an attestation or affidavit of intent to enter into a Covenant Marriage.
InThe trial judge concluded that the mandatory requirements for a valid Covenant Marriage were not met: namely, a notarized Declaration of Intent signed by the prospective spouses (La. R.S. 9:273) and premarital counseling (La. R.S. 9:273(A)(2)(a)).
After that ruling, Ms. Short filed a motion for new trial based on alleged newly-discovered evidence. She stated that she discovered a duplicate original of the Declaration of Intent signed by both parties. However, she made no “due diligence” showing nor did she attach the required verified affidavit.[10] At the hearing, Mr. Short’s counsel objected to the absence of the required verified affidavit. The trial court properly denied the motion for new trial.[11] See: Bergeron v. Illinois Central Gulf Railroad Co., 402 So.2d 184 (La.App. 1 Cir.), writ denied, 404 So.2d 1260 (La.1981).
Ms. Short maintains, however, that the supporting documentation was unnecessary because once the certified copy of the certificate of marriage was introduced as a joint exhibit, she met her burden of proving a valid Covenant Marriage. We disagree.
There is no provision in the Covenant Marriage Act stating that the mandatory requirements for a valid Covenant Mar *412 riage are met solely by a signed statement of intent on the marriage certifícate. Rather, the Covenant Marriage Act mandates special procedures for perfecting such a marriage.
| mEssential requirements are encompassed within a Declaration of Intent that must be signed by the parties: (1) a detailed recitation of the elements of the Covenant Marriage contract; the parties’ acknowledgement that they have received premarital counseling on the nature, purposes, and responsibilities of marriage; their acknowledgement they have read the Covenant Marriage Act, and they understand that a Covenant Marriage is for life; and, their commitment to each other. (2) An affidavit by the parties that they have received premarital counseling from certain entities, including a minister or clergyman of any religious sect. (3) Premarital counseling, which includes a discussion of the seriousness of Covenant Marriage, communication of the fact that a Covenant Marriage is a commitment for life, a discussion of the obligation to seek marital counseling in times of marital difficulties, and a discussion of the exclusive grounds for legally terminating a Covenant Marriage by divorce or by divorce after a judgment of separation from bed and board.[12] (3) An attestation, signed by the counselor and attached to or included in the parties’ affidavit, confirming that the parties were counseled as to the nature and purpose of the marriage. La.R.S. 9:273(A).
The Act provides that the Declaration shall contain two separate documents, the recitation and the affidavit, the latter of which shall include the attestation either included therein or attached thereto. La. R.S. 9:273(B). The Act further provides that the recitation shall be prepared in duplicate originals, one of which shall be retained by the parties and the other, together with the affidavit and attestation, shall be filed as provided in R.S. 9:272(B) (“The application for a |nmarriage license and the Declaration of Intent shall be filed with the official who issues the marriage license.”). Id.
Importantly, Mr. Short denied signing the required Declaration of Intent and he also denied receiving the mandated premarital counseling. Reverend Zimmer was uncertain whether the parties signed a notarized form attesting that they had a discussion with him about the Covenant Marriage. Considering Reverend Zim-mer’s uncertainty and Mr. Short’s denial that the parties had the requisite premarital counseling, we find no manifest error in the trial judge’s ruling there was no valid Covenant Marriage.

Tuition Judgment

The trial judge did not order Mr. Short to pay his proportionate share of tuition costs. Ms. Short argues that the trial judge was manifestly erroneous and failed to recognize the presumption that Ms. Short’s choice of school as the domiciliary parent was in the best interest of the children.
Both parties testified at the tuition hearing. Mr. Short testified he was not consulted and knew nothing of the intention to enroll the children in the expensive private school despite the fact that in July 2007 Ms. Short agreed to timely share information, including education. Ms. Short admitted she lives on the North Shore with *413 Mr. Menendez, the man named in the divorce petition as her paramour.
Ms. Short moved to the North Shore in August 2007 and enrolled her children in Kehoe-France. According to Ms. Short, unlike a public school, Kehoe-France meets the gifted and talented needs of the children.
She testified that she tested Anthony when he was 5-1/2 with a homeschool program — the California Achievement Test— and he tested at above the third grade level. She stated that on standardized tests, Anthony always placed at least three or | igfour years above his level. And, Anthony and Sarah are in advanced classes at Kehoe France.
Mr. Short, however, testified differently. He stated that Anthony told him that he was in the first grade. Mr. Short did not know that Anthony was in advanced classes. He did not, however, speak to anyone at Kehoe-France about his children’s needs.
According to Ms. Short, Kehoe-France, unlike public schools and most private schools, quickly placed gifted students in advanced classes. Other schools required such. a gifted student to remain in the regular class. She acknowledged that public schools have gifted and talented classes, but stated that a child must wait six months for testing. And, according to Ms. Short, the public schools only offer a minimum one hour per week per school per child of gifted/talented programs.
Ms. Short testified that in addition to Kehoe-France’s gifted program, the school offers Spanish, swimming, and horseback riding. Also, if she needed to move to the South Shore, Kehoe-France has a school there.
According to Ms. Short, on July 1, 2007, she planned to continue to homeschool the children for the 2007-08 school year but the hearing officer told her to enroll the children in school. Therefore, she had to quickly find a school. Of the schools she investigated, Kehoe France alone was excellent and had openings. She was aware, however, that some public schools in St. Tammany Parish, where she resides, are excellent and public schools had openings.
On the other hand, Mr. Short testified that the hearing officer did not order the enrollment. The hearing officer only told them that if they planned to enroll the children at that late date, they should start investigating schools.
| iSMr. Short testified that he could not afford the tuition.[13] He did not have the opportunity to investigate other schools because he thought that Ms. Short would continue homeschooling the children and he had time to research the matter. He believed that the North Shore public school system offered a good option.
The trial judge concluded that Ms. Short, a nonprofessional, presented a one-sided view as to Anthony’s high level functioning. The trial judge also remarked there was no testimony presented about the advancement of the other two children. Ms. Short’s counsel stated that counsel had Anthony’s test results but no evidence was introduced.
After remand, in denying the request for additional child support (private tuition and expenses), the trial judge reasoned that the presumption that the domiciliary parent’s decisions are in the best interest *414 of the children is not absolute. Moreover, under the governing statute, La.R.S. 9:315.6, Ms. Short failed to meet her burden. He found that the children, who were homeschooied, did not have a consistent history of attendance at private schools which would require their attendance to ensure stability and continuity in their education. Further, he found there was no supporting evidence that Kehoe France met the children’s needs. Finally, he concluded that Ms. Short rushed the enrollment and did not investigate other options.
A trial court may award child support for expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child. La. R.S. 9:315.6(1). Short, supra, 09-639 at 13, 33 So.3d at 996. Expenses associated with private school are not automatically added to the basic child support obligation. Campbell v. Campbell, 95-1711 (La.App. 1 Cir. 10/10/96) 682 So.2d 312, 320 citing La.R.S. 9:315.6, which provides in part (emphasis added):
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.
The word “may” in this statute indicates the addition of private school expenses is permissive and not mandatory. Campbell, supra.
La. R.S. 9:315.6 was amended in 2001 removing the language requiring that a “particular educational need” to attend the special or private school be shown. The statute, as amended, is less restrictive to encompass generally “the needs of the child.” State Dept. of Social Services ex rel. K.L. v. Lesky, 07-599, p. 5 (La.App. 5 Cir. 12/27/07), 975 So.2d 657, 659.[14] The comments to La.R.S. 9:315.6 provide in pertinent part: “The needs of the child met by the special or private school need not be particular educational needs, but *415 may include such needs of the child as the need for stability or continuity in the child’s educational program.” 2001 Comments to La.R.S. 9:315.6.
Thus, in the absence of an agreement of the parties, Ms. Short was required to present evidence that an education at Ke-hoe-France was necessary to meet | l5the children’s needs. D’Aquilla v. D’Aquilla, 03-2212, p. 9 (La.App. 1 Cir. 4/2/04), 879 So.2d 145, 150, writ denied, 04-1083 (La.6/25/04), 876 So.2d 838.
A trial court’s determination of whether to include private school tuition in a basic child support obligation will not be disturbed absent an abuse of discretion. Lesley, supra, 07-599 at 5, 975 So.2d at 659 (citation omitted). Generally, an appellate court will not disturb a child support order unless there is an abuse of discretion or manifest error. Id.
On appeal, Ms. Short states that the trial judge’s reasons for judgment are directly contrary to the facts presented in the two separate hearings, and flies in the face of the judgment which denied the opposition to the school. She argues that on remand, the trial judge should have considered the hearing of August 4, 2008 (Mr. Short’s opposition to the school placement for the following year). In any event, even if the trial judge had considered both hearings, we find that at neither hearing did Ms. Short introduce corroborative or supporting evidence — a concern that the trial judge expressed.
Ms. Short admitted there were some excellent public schools in her area. However, she stated that those schools had limited gifted programs.
The trial judge concluded that Ms. Short rushed to enroll their children in Kehoe-France without adequately investigating the school-placement options. Ms. Short defended her actions by testifying that the hearing officer told her to enroll the children in school. The trial judge, however, did not find that testimony credible. His conclusion is supported by the record. The record contains no order ordering school placement. Also, Mr. Short testified that the hearing officer only told them that if they contemplated school placement they should soon start investigating their options. The trial judge evidently accorded Mr. Short’s testimony on that issue as more credible. Additionally, the trial judge (in making 11fihis credibility determinations) was mindful that Ms. Short did not abide by the co-parenting agreement by failing to timely inform Mr. Short about the school placement. In sum, the trial judge reasoned that school placement at Kehoe-France was a premature unilateral decision that lacked adequate investigation of alternative schools. We find the trial court could have reasonably reached the conclusion of inadequate investigation of alternative schools in view of the rush to placement at Kehoe-France. Furthermore, the children were homeschooled and had not been in private school. Thus, there was no need for stability and continuity in a private school setting.
Also, by reasoning that Ms. Short did not have supporting evidence, the trial court essentially attached little credibility to her testimony alone. Therefore, he evidently attached little weight to Ms. Short’s testimony on the issue of whether her children were gifted and only Kehoe-France could meet that need or that their alleged gifted need could be met only at Kehoe-France rather than the available public school or any other school. Thus, in light of the trial judge’s reasonable findings, we will not reweigh Ms. Short’s self-serving testimony unsupported by any documentary evidence or testimony. Mr. Short testified that he had no time to conduct an adequate investigation of school options since he did not learn until much *416 later that she had rushed to enrollment without consulting him. By rushing to enroll the children, the trial judge could have reasonably concluded that Ms. Short did not perform an adequate investigation and therefore she failed to show that the children had gifted needs for which the public schools were inadequate.
To reverse a fact finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993) (citations omitted). Upon review of the record and finding a reasonable basis for the trial court’s conclusion that there was no proof that the children were gifted and thus had needs that were met by Kehoe-France alone, we find no error in the trial court’s finding that Ms. Short did not meet her burden of proof on this issue. Compare: State, Dept. of Social Services v. Swords, 08-0580, pp. 3-4 (La.App. 3 Cir. 11/5/08), 996 So.2d 1267, 1270 (The appellate court reversed the trial court’s award of tuition expenses because the mother’s unsupported testimony was insufficient to prove needs.).
Ms. Short also argues that the trial court’s decision on remand is inconsistent with applicable law regarding the domiciliary parent’s decisions. She contends that once the trial court determined (in the other judgment not on appeal) that the private school was in the best interest of the children, the trial court should have ordered the father to pay his proportionate share of the costs.
As the domiciliary parent, Ms. Short has the authority under La. R.S. 9:335(B)(3) to “make all decisions affecting the child unless an implementation order provides otherwise.” La. R.S. 9:335(B)(3) also provides that all major decisions made by a domiciliary parent are subject to review by the court upon motion of the other parent and that there is a presumption that all major decisions made by the domiciliary parent are in the best interest of the child. In this case, the trial court evidently found that Mr. Short failed to overcome the presumption of the law that Ms. Short’s choice of school for the 2008-09 school year was in the best interest of the children. Mr. Short did not appeal that judgment. Rather, Ms. Short appeals the trial judge’s ruling on remand that private school tuition as a special or extraordinary expense may not be added into the computation of the total child support obligation pursuant to La. R.S. 9:315.6(1). On this issue, Ms. Short has the | isburden to prove the private school fulfills the needs of the children in a different manner from the public school or an alternative school.
We recognize that our ruling regarding the cost of tuition contrasts from the trial court’s unappealed judgment regarding Ms. Short’s choice of the private school but the burdens of proof are different. See and Compare: Shaw v. Shaw, 30,613, p. 13 (La.App. 2 Cir. 6/24/98), 714 So.2d 906, 913, writs denied, 98-2414, 2426 (La.11/20/98), 729 So.2d 556, 558.[15] In other words, to rebut the domiciliary presumption, Mr. Short had to show that the school decision was not in the best interest of the children. Whereas, for the special charge for private school tuition to be added to Mr. Short’s basic child support obligation, Ms. Short must prove that the *417 “[ejxpenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school meet the needs of the child.” La. R.S. 9:315.6. Stated differently, Ms. Short had the burden to prove the children’s needs are met only through the private school.
We find that the trial judge did not abuse his discretion in finding that Ms. Short’s decision as domiciliary parent that raised the question of additional child support was outweighed by the burden-shifting statute, R.S. 9:315.6.

Conclusion

For the foregoing reasons, we affirm the judgments.

AFFIRMED

. That judgment was rendered July 29, 2010 and a motion for new trial was denied on August 26, 2010.

. That judgment was rendered on July 7, 2008 but the written judgment denying the motion for new trial was not signed until August 18, 2010.

. Evidently, the judgment was not presented to the trial judge when rendered or shortly thereafter. Uniform Rules — District Courts, Rule 9.5 pertinently provides:
All judgments, orders, and rulings requiring the court's signature shall either be presented to the judge for signature when rendered or, if presented later, contain the typewritten name of the judge who rendered the judgment, order, or ruling. If presented later, the responsible attorney or the unrepresented party shall circulate the proposed judgment, order, or ruling to counsel for all parties and to unrepresented parties and allow at least three working days for comment before presentation to the court. When submitted, the proposed judgment, order, or ruling shall be accompanied by a certificate regarding the date of mailing, hand delivery, or other method of delivery of the document to other counsel of record and to unrepresented parties, stating whether any opposition was received.

. The "law of the case” principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case. Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81, 83 (La.1973).

. Since the trial court’s ruling in open court on the Covenant Marriage issue was not signed until after we rendered our previous opinion in this matter, Ms. Short’s previous answer raising this issue was premature.

. A certified copy of the marriage certificate was introduced into evidence as a joint exhibit.

. Ms. Short relies on La.C.E. art. 905(A), which states:
Self-authentication. Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to a document purporting to be a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, when it is certified as being true or correct by the custodian or other person authorized to make the certification, by certificate complying with Article 902(1), (2), or (3) and when, by statute, it is made to be presumptively or prima facie genuine or authentic.

. Current law requires the application for a marriage license must also include the statement completed by at least one of the two parties. La.R.S. 9:224(C). However, under current law, the failure of the application to contain the signatures of both parties shall not affect the validity of the covenant marriage if the declaration of intent and accompanying affidavit have been signed by the parties. La.R.S. 9:224(E). 1999 La.Acts, No. 1298 § 1.

.La.R.S. 9:224(C) provides that the marriage application must include that statement. Also, La.R.S. 9:245(A)(1) states that the marriage certificate shall include, if applicable, “a designation that the parties entered into a covenant marriage, signed by the parties to the marriage and by the witnesses, and the signature and title of the officiant.” The marriage certificate in this case contains two sets of signature lines. The first set concerns the Covenant Marriage statement while the second set concerns the ceremony. Here, the Covenant Marriage statement contained signature lines for the parties only while the lower portion (concerning the ceremony) contained signature lines for witnesses, the parties, and the officiant. Reverend John Zim-mer, the officiant, testified that he completes the ceremony portion of the form and then mails the form to the Clerk of Court. The only signatures done in his presence are those pertaining to the ceremony.

. La.C.C.P. art. 1972(2) provides that a new trial shall be granted, upon contradictory motion of any party, when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial. La. C.C.P. art. 1975 provides that when the motion is based on Article 1972(2), the allegations of fact therein shall be verified by the affidavit of the applicant.

. Ms. Short states in brief that the duplicate original of the Declaration of Intent was presented to the trial court at the hearing on the motion for new trial. We have reviewed the transcript and find that no document was introduced into evidence or proffered at that hearing. Rather, Ms. Short’s counsel mentioned that she showed the trial judge the document. Mr. Short’s counsel disputed that allegation, stating that at a status conference, Ms. Short's counsel "flashed" a document in front of the court. The trial judge did not comment when he denied the motion.

. After the parties were married in 1997, the act was amended by Acts 1999, No. 1298, § 1 to further require an acknowledgement that the parties received and read the informational pamphlet developed and promulgated by the office of the attorney general entitled "Covenant Marriage Act” which provides a full explanation of the terms and conditions of a Covenant Marriage.

. At the conclusion of the hearing, Ms. Short’s counsel argued that the cost of the school was only slightly higher than any other parochial school. The trial judge later opined that the tuition was probably not that much higher than most parochial schools. No evidence was introduced, however, to compare these tuition costs.

. During oral argument, Ms. Short raised as error the trial judge's alleged reliance on the wrong law. She argued that this Court should conduct a de novo review because the trial judge erred as a matter of law in his reasons for judgment when he referred to the former law, which required a showing of "particular educational need.” Uniform Rules — Courts of Appeal, Rule 2-12.4 further provides that "[a]ll specifications or assignments of error must be briefed" and that the “court may consider as abandoned any specification or assignment of error which has not been briefed.” Since Ms. Short did not brief this error, we deem the issue abandoned. But, assuming this issue is properly before this Court, it lacks merit. The district court’s oral or written reasons for judgment form no part of the judgment, and appellate courts review judgments, not reasons for judgment. Bellard v. Am. Cent. Ins. Co., 07-1335, 07-1399, p. 25 (La.4/18/08), 980 So.2d 654, 671 (citations omitted). After our review of the record and the trial court’s judgment and reasons for judgment, we cannot conclude that the trial court misapplied the burden of proof such as would warrant a de novo review. The trial court made specific credibility determinations and factual findings in support of its judgment. The overriding fact question in the case turned on credibility. The trial court’s findings, reasons, and exercise of discretion are clearly implied by the record. See Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/96), 676 So.2d 89, 96 (citation omitted) (De novo review is an exceptional remedy available only when the trial court’s "findings, reasons and exercise of discretion are [not] necessarily and clearly implied by the record.”). Here, the trial court considered and applied the correct law in its analysis of the testimony and evidence presented at trial. Thus, the manifest error standard applies.

. Although Shaw was decided under the former law, which required proof of particular educational needs, we find the discussion with respect to the different burdens of proof applicable to the amended law as well.