# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**23-164**


**JAMIE L. RABALAIS**

**VERSUS**

**DEREK J. RABALAIS**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20176790
HONORABLE DAVID A. BLANCHET, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

**Scott M. Hawkins**
**Hawkins & Associates, LLC**
**913 South College Road, Suite 260**
**Lafayette, LA 70503**
**(337) 210-8818**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Derek J. Rabalais**

**Philip C. Kobetz**
**David P. Kobetz**
**Philip C. Kobetz, LTD., A Professional Law Corporation**
**P. O. Box 80275**
**Lafayette, LA 70598-0275**
**(337) 291-1990**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Jamie L. Rabalais**

**KYZAR, Judge.**

In this child support and custody dispute, the defendant, Derek J. Rabalais, appeals from the trial court judgment ordering that the costs of private school tuition be included in the calculation of his child support obligation. For the reasons set forth, we affirm the ruling of the trial court.

## FACTS AND PROCEDURAL HISTORY

Derek J. Rabalais and Jamie L. Rabalais were married on March 20, 2004, and are the parents of three minor children born in 2006, 2007, and 2010. After Derek and Jamie separated in 2016, Jamie moved with the children back to Lafayette Parish, where the parties had been domiciled prior to moving to Destrehan, Louisiana in 2013, for Derek's employment. As a result of a May 15, 2018 Joint Custody Implementation Plan, the parties agreed that custody of the children would be shared jointly, and Jamie would be designated as the domiciliary parent. Although the parties' divorce was finalized on February 1, 2019, proceedings between them relative to child support, custody, and community property have been highly contentious and ongoing.

At issue in this appeal is Jamie's decision to enroll the two youngest children, Kate and Leah, in private school at Vermilion Catholic.[1] On July 7, 2021, Derek filed a motion challenging this decision, arguing that the children had historically attended public schools and that their elder brother, Jay, was attending public school. He claimed that the change in schools was not in Kate and Leah's best interests and that there was "no bona fide showing that the children's attendance at a private school meets a particular educational need which is not being met by the public school." Thus, he argued, he "should not be responsible for a pro-rata share of the

---

[1] The official name of Vermilion Catholic is Vermilion Catholic, a legacy of Mount Carmel.

school expenses." Jamie responded to the motion on July 20, 2021, and additionally filed various reconventional demands against Derek.

This matter was heard by the trial court on March 30, April 1, and May 23, 2022, which included the consideration of six separate motions and/or rules to show cause. At the close of the hearing, the trial court took the matter under advisement, ordering counsel for the parties to submit post-trial memoranda. The trial court then issued written reasons for judgment on July 20, 2022, finding in addition to other rulings, that it was in the best interest of the children that they attend Vermilion Catholic and that the costs associated therewith would be included in Derek's child support obligation. A written judgment was rendered by the trial court on October 19, 2020, and all other portions of the judgment not appealed are deemed final.

On appeal, Derek raises two assignments of error:

1. The trial court committed legal error by applying the incorrect legal analysis and burden of proof in determining the children had a need to attend private school. This assignment of error is subject to de novo review.

2. The trial court abused its discretion when it determined that it was proven that the children had a need, within the meaning of La. R.S. 9:315.6, to attend private school. This assignment of error is subject to abuse of discretion/manifest error review.

**OPINION**

In brief, Derek contends that the trial court committed legal error in its application of La.R.S. 9:315.6 and that it erroneously applied the best interest analysis of La.R.S. 9:335(B)(3), rather than the "need" analysis of La.R.S. 9:315.6, when it explicitly found that enrollment in Vermilion Catholic was in the best interests of the children.

Although Derek's appeal only questions the trial court's inclusion of Vermilion Catholic's tuition in his child support obligation, that question is inextricably intertwined with the trial court's finding that it was in Kate and Leah's

2

best interest that they attend the school. Accordingly, we will discuss these questions together.

"[T]he plain language of La. R.S. 9:335 manifests the legislature's clear intent to establish a custodial system in which a child has a domiciliary parent and no more than one such parent. The text is clear." *Hodges v. Hodges*, 15-585, p. 9 (La. 11/23/15), 181 So.3d 700, 706. "All major decisions made by the domiciliary parent, which would include the choice of schools, are subject to judicial review upon motion by the non-domiciliary parent." *Shaw v. Shaw*, 30,613, p. 8 (La.App. 2 Cir. 6/24/98), 714 So.2d 906, 910, *writs denied*, 98-2414, 98-2426 (La. 11/20/98), 729 So.2d 556, 558; La.R.S. 9:335(B)(3). On appellate review, "it is presumed that all major decisions made by the domiciliary parent are in the best interest of the child and the burden of proving they are in fact not in the best interest of the child is placed on the non-domiciliary parent who opposes the decision." *Id.* A trial court's ruling in a custody matter "is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse." *C.M.J. v. L.M.C.*, 14-1119, p. 17 (La. 10/15/14), 156 So.3d 16, 29. Furthermore, a trial court's findings of fact will not be "disturbed on appeal absent manifest error." *Id.*

Louisiana Revised Statutes 9:315.6(1) provides that "[e]xpenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child[]" may be added to the basic child support obligation "[b]y agreement of the parties or order of the court[.]" When La.R.S. 9:315.6 was amended by 2001 La. Acts No. 1082, § 1, the official comment provided as follows:

> Prior to 2001 "any expenses" for attending a special or private elementary or secondary school to meet the "particular educational" needs of the child could be added to the basic child support obligation calculated using the guideline tables. Clarifying language was added to Paragraph (1) to specify the types of school expenses—tuition,

3

registration, books and supply fees required for attending the school– permitted to be added to the basic child support amount, but the necessity of showing that attendance at the special or private school was required to meet the "particular educational" needs of the child was eliminated. The needs of the child met by the special or private school need not be particular educational needs but may include such needs of the child as the need for stability or continuity in the child's educational program.

Absent an agreement between her and Derek, Jamie was required to present evidence to establish that a private school education was necessary to meet the needs of the children in order for the tuition to be included in Derek's child support obligation. *Short v. Short*, 11-3 (La.App. 5 Cir. 10/25/11), 77 So.3d 405, *writ denied*, 11-2635 (La. 2/10/12), 80 So.3d 472.

The decision to add private school tuition expenses to the basic child support obligation will not be disturbed unless it is an abuse of the trial court's discretion. *A.S. v. D.S.*, 14-1098 (La.App. 4 Cir. 4/8/15), 165 So.3d 247. A trial court necessarily abuses its discretion if its ruling is based on an erroneous view of the law. *Id.*

The trial court, in its written reasons, set forth the following on the issue of the children attending private school:

**1.   Whether enrolling Leah in Mount Carmel and Kate in Vermilion Catholic is in their best interest**

Since JAMIE and the children relocated from Destrehan to Youngsville, Louisiana, in 2017, the minor children were enrolled in the Lafayette Parish Public School System. During the 2020-2021 school year, Kate began to have problems at school. Kate and other students were involved in cyberbullying, some of which was initiated by Kate. At some point, a photograph of Kate in a bikini began to be circulated on-line among students at the school. In addition, a picture depicting a female from the neck down either nude or scantily clad also began to circulate among students at the school via social media purporting to be a photograph of Kate. In fact, the photograph was not of Kate, but the bullying and ridicule caused Kate great emotional distress. Around this time, Kate began to receive inappropriate communications over social media from her future stepmother's brother, known as "Dutch", who is approximately fifty (50) years of age. Dutch repeatedly communicated with Kate for several months at

4

all hours of the day through various social media platforms. When Kate blocked Dutch on a particular platform, he got around it by contacting her through another social media provider. Dutch even told Kate he got a special tattoo on his neck for her. At some point, Kate began to feel uncomfortable about the attention she was receiving from Dutch and confided in JAMIE about the situation. JAMIE reached out to DEREK, who initially blamed Kate. Unfortunately, when Kate attended the wedding of her father and stepmother, a conversation ensued between Kate and her cousin regarding Dutch's unwanted contact. The cousin referred to Dutch as a pedophile, which was overheard by Dutch causing him to become angry. This caused a huge scene at the wedding. Kate's stepmother accused her of ruining her wedding day.

Leah was also having school issues at this time. Leah was depressed and unhappy at her school. The larger class sizes caused her to have issues paying attention making it harder for her to learn.

Overlaying all of this was the parents' ongoing litigation more fully discussed above, their poor communication and the children being placed in the middle of their disputes.

JAMIE began to look into Mount Carmel and Vermilion Catholic in March of 2021. At that time, JAMIE filed paperwork seeking scholarships for Kate to attend Vermilion Catholic. On May 13, 2021, JAMIE and DEREK had a telephone conversation regarding their daughters changing schools, as referenced in July 3, 2021 email from JAMIE to DEREK. The email reads as follows:

> Since our conversation on May 13th regarding the children and the issues with Kate at school and Southside not being the best High School option for her .... I've been looking into other school options for the girls. While Southside High has been great for Jay I agree that it's not the best option for Kate or Leah. I've narrowed it down to Vermilion Catholic for Kate and Mount Carmel for Leah....they are sister schools with campus [sic] next door to each other and about 15 minutes from my house with much less traffic to get there. In addition, to the school being substantially smaller and offering better curriculum/environment they offer free school tutoring. Also Jay has done well at Southside High and I don't want to jeopardize that for him considering in the past Kate's drama has caused to get him in trouble...[.] I don't want a repeat of this for him. In addition to these schools supporting our Catholic faith [sic] they offer more future opportunities for college scholarships and offer better preparation for them. Derek, I've put a lot of thought and research into this and I think this is the best option for the girls. I haven't discussed with the children yet because it's not their decision and I wanted to have the conversation with you first.

DEREK's initial response was that he did not agree with enrolling Kate and Leah in a Catholic or private school. When JAMIE asked for DEREK's reasoning, he responded as follows on July 4, 2021:

> Our conversation on May 13[th] was based on Kates [sic] actions on social media and the people she is hanging around. I definitely feel they are a bad influence on her. I'm not sure why now you feel the schools are not good for the girls? You indicated on multiple occasions the reason you moved to where you currently are was based on how great the schools were for the kids.

> I did message you on May 16[th] that I believe it would be a good idea for Kate to move here with me because I don't feel Lafayette is a good fit for her. The idea came from Kate when she expressed she wanted to move here. **The changing of schools was mentioned as a talking point to the idea of her moving here, to St. Charles [P]arish to start over and get a change of environment and friends to what she is currently around.**

> I am very fortunate to live in a parish with a great school district. In fact, it was the main reason we chose to live in Lulling [sic] when we moved here, and I 100% [sic] feel it would be great for Kate to move here.

> Please help me understand how her going to the school you are suggesting will change her behavior? Will she no longer be able to hang out with the friends she has now by going to that school? Kate realizing [sic] and truly understanding that her actions make her look horrible and that when a boy sees those actions it makes them see her in certain ways. That is what needs to be addressed, not the changing of schools to fix these problems.

> Kate is a great kid and makes good grades. I don't understand how one school offers more scholarships than the other? With the right grades, hard work and applying herself Kate can get a scholarship at which ever [sic] school she goes to.

> What exactly is the reason for Leah going to a different school? Her grades are great and I have never been told of any problems at all with her at school??

> Attending a [C]atholic school is not the only way children can get their faith. I definitely hope I'm teaching them to live life in Gods [sic] eyes and going to church are just as acceptable. (Emphasis added[.])

6

It is clear from DEREK's response that he believes a change in school environment and friends is a good idea for Kate, but his solution is for her to move back to Destrehan with him. DEREK feels Lafayette is not a good fit for Kate and states he does not see how a school would change her behaviors or distance her from her present friends.

Despite DEREK's protestations, JAMIE decided to enroll Leah in Mount Carmel and Kate in Vermilion Catholic. A copy of Kate's registration for Vermilion Catholic was filed into evidence and is dated July 8, 2021. Kate received two (2) scholarships from the school reducing her tuition substantially. At the hearing, DEREK complained that he did not know the children were enrolled in the new schools until after the fact. However, DEREK's "Motion to Challenge Domiciliary Decision" was filed on July 7, 2021, the day before Kate was registered at Vermilion Catholic, calling his allegation into question.

The Court finds that JAMIE complied with the provisions of R.S. 9:336, which states:

> Joint custody obligates the parents to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making authority.

DEREK's first allegation is that JAMIE's proposed change in schools is not in the best interest of the minor children. As the domiciliary parent, major decisions by JAMIE are presumed to be in the best interest of the children subject to review by the Court upon DEREK's motion. See R.S. 9:[335](B)(3). The Court finds that DEREK has failed to rebut the presumption that JAMIE's decision regarding schooling is in the children's best interest. The evidence is overwhelming that Vermilion Catholic and Mount Carmel have served the best interests of Kate and Leah, respectively. Dr. Amy Cavanaugh, Ph.D., testified extensively regarding the benefits the children have received from the school change. This was addressed both in her testimony and her reports of September 28, 2021, and March 23, 2022, introduced into evidence.

DEREK argues in his post-trial memorandum that though JAMIE relies heavily on Dr. Cavanaugh's opinion to justify enrolling Kate and Leah in private school, she made the decision prior to Dr. Cavanaugh's involvement and without any recommendations from her whatsoever. Dr. Cavanaugh's Progress Note of July 8, 2022, indicates that JAMIE discussed her decision to enroll Kate and Leah in private school with Dr. Cavanaugh that day. In the appointment between Dr. Cavanaugh and Kate that same day, Kate told Dr. Cavanaugh that her mother just informed her she would be attending private school. The school change was discussed by Dr. Cavanaugh and Kate during the appointment. JAMIE registered Kate at Vermilion Catholic the following day. JAMIE, as the domiciliary parent, has the right to make major decisions for her children after discussing them with DEREK,

7

which she did in this case. A domiciliary parent is not required to consult a mental health professional when making such decisions. Dr. Cavanaugh's reports and testimony support this Court's findings that JAMIE enrolling Kate and Leah in private school was the right decision and in their best interest.

In the above email, DEREK asks JAMIE two (2) questions, how will Kate's attendance at Vermilion Catholic change her behavior and whether Kate will no longer "hang out" with her current friends? The fact is, changing schools has changed Kate's behavior. According to Dr. Cavanaugh, Kate no longer associates with the people she previously attended school with, and has made "a lot of friends". She enjoys smaller class sizes and close knit community of the school. Kate committed herself to not being involved in any drama, she is making good grades and describes the school as a good change for her, particularly being around positive peers. DEREK also asks JAMIE in his email whether the people on Kate's social media no longer influence her because of the school change. In reflecting on her past social media behavior with Dr. Cavanaugh, Kate described it as "so trashy". This leads the Court to believe that Kate has gained valuable insight into her former behavior and has developed self-respect, boundaries and a sense of cyber safety. It is Kate's belief that her father has seen that she has changed in positive ways since transferring to Vermilion Catholic. Kate reported to Dr. Cavanaugh that as of March of this year, her behavior was such that her phone had not been taken away in two hundred (200) days.

According to Dr. Cavanaugh, Leah states she loves her school and wants to continue to attend. Leah reports that her grades are better at Mount Carmel than Milton Elementary, even though the work is more challenging. Leah has made new friends, describes the teachers as nice and understanding, and the students as being really good influences. Leah also reports it is easier for her to learn and pay attention. Dr. Cavanaugh noted in her testimony that both girls saw a positive change in each other since the school change.

2. **Whether DEREK should pay his proportionate share of the school expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of Kate and Leah in accordance with R.S. 9:315.6**

DEREK's second argument as to why the children should not attend private school is because the private school does not meet a particular educational need, thus he should not have to pay his proportionate share of the school expenses. La. R.S. 9:315.6 provides in pertinent part:

> By agreement of the parties or order of the Court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:

8

(1) Expenses of tuition, registration, books and supplies required for attending a special or private elementary school to meet the needs of the child.

Though DEREK argues that JAMIE failed to meet her burden of proof that the children have a need that can only be addressed by private school, this is a misstatement of the law. After the 2001 amendment to R.S. 9:315.6, there is no longer any necessity of showing that the attendance at a private school was required to meet the "particular educational" needs of the child. The official 2001 Comment to this statute provides:

Prior to 2001 "any expenses" for attending a special or private elementary or secondary school to meet the "particular educational" needs of the child could be added to the basic child support obligation calculated using the guideline tables. Clarifying language was added to Paragraph (1) to specify the types of school expenses-- tuition, registration, books and supply fees *required* for attending the school-permitted to be added to the basic child support amount, but the necessity of showing that attendance at the special or private school was required to meet the "particular educational" needs of the child was eliminated. The needs of the child met by the special or private school **need not be particular educational needs but may include such needs of the child as the need for stability or continuity in the child's educational program.** (Emphasis added[.])

The comment makes it clear that JAMIE does not have to prove the children have a need that only private school can address. The needs of the child "may include such needs of the child as the need for stability or continuity in the child's educational program." This language is discretionary and "stability or continuity" are non-exclusive examples of the types of needs that may be included. As stated by Dr. Cavanaugh in her March 23, 2022 report:

Although children may be able to learn in any school environment, children's learning potential and academic success are greatly improved when their behavioral challenges are addressed and their social-emotional needs are being met as they appear to be since Kate and Leah's enrollment at Vermilion Catholic this school year.

The Court agrees with this statement by Dr. Cavanaugh and finds that the private school setting has greatly enhanced the educational benefits for Leah and Kate. The fact that these children love the school, have a high regard for the quality of their peer group, and are striving for and achieving academic success meets the needs of the children's educational program. This is especially true considering the acrimonious divorce of these parties, their constant litigation, the social

9

media issues between Kate and her peers, as well as the inappropriate contact and attention she received from Dutch. The Court finds that DEREK should be responsible for his proportionate share of the school expenses of Leah and Kate as set forth in La. R.S. 9:315.6.

JAMIE shall continue to use her best efforts to obtain scholarships and tuition waivers for the children as she did for the 2021-2022 school year.

(Second, third, fourth, seventh, and eleventh alterations in original.)

We agree with the well-reasoned factual findings and conclusions of the trial court and find no misapplication of the law as to the decision to enroll the two children in private school. Jamie conflates the issue of the domiciliary parent's decision to enroll the children in private school and the trial court's determination of the propriety of that decision using the best interest standard with the trial court's decision to require the non-domiciliary parent to pay at least a portion of that expense, which is governed by the standard set forth in La.R.S. 9:315.6. That provision specifically states that expenses for tuition "may be added to the basic child support obligation" in order to "meet the needs of the child." While the domiciliary parent's decision to send the child or children to a private school may indeed be approved by the trial court as being in the best interest of the children, that determination does not necessarily preclude the trial court from determining that the decision is not necessary to meet the particular needs of the children, such that the non-domiciliary parent is not obligated to share in the expense. We find no legal error in the trial court's application of the best interest standard in upholding Jamie's decision to enroll Kake and Leah in Vermilion Catholic.

We further find no abuse of the trial court's discretion in its decision to include the Vermilion Catholic tuition in the child-support calculation and requiring Derek to pay his pro-rata share. As the official 2001 comment reflects, La.R.S. 9:315.6(1) was broadened to allow consideration of more than just the particular educational

10

needs and to allow for consideration of other circumstances that meet the needs of the child. While the comment makes it clear that such needs may include stability and continuity in the child's educational program, clearly stability and continuity are illustrative, but not exclusive, of the types of needs which may be satisfied by sending a child to private school. Here, the trial court heard significant testimony as to the reasons why Jamie believed it necessary for the two children to be enrolled in Vermilion Catholic. Kate was subjected to bullying and significant peer pressure at her prior school. According to Dr. Cavanaugh, an expert in the field of clinical and medical psychology, she was further diagnosed with an adjustment disorder, which is an accepted clinical diagnosis according to the diagnostic manual used by psychologists and psychiatrists for diagnosing mental disorders.

When Dr. Cavanaugh was asked on direct examination if, in her opinion, it was "in the best interest of Kate and Leah that they attend and continue to attend Vermilion Catholic School[,]" she replied unequivocally, "Yes." When asked whether their enrollment at Vermilion Catholic met their needs, she stated, "I think from a psychosocial emotional perspective, which means, like, the underpinning of any learning or academic success that takes place, I think their attendance at Vermilion Catholic meets that need for stability." She further testified that based on the "bullying and cyber issues with Kate, and then Leah's description of being unhappy and depressed at her previous school[,]" their needs were not being met by their previous public schools.

The trial court agreed with Dr. Cavanaugh that Vermilion Catholic was meeting the needs of the children. "A trial court may accept or reject in whole or in part the opinion expressed by an expert[,]" and "[t]he effect and weight to be given expert testimony is within the broad discretion of the trial judge." *Rao v. Rao*, 05-59, p. 14 (La.App. 1 Cir. 11/4/05), 927 So.2d 356, 365, *writ denied*, 05-2453 (La.

11

3/24/06), 925 So.2d 1232. We find no abuse of that discretion here. As such, we find no abuse of discretion or manifest error in the trial court's decision to include the private school tuition in Derek's child support calculation.

## DECREE

The judgement of the trial court is affirmed. All costs of this appeal are assessed to Derek J. Rabalais.

**AFFIRMED.**